541 P.2d 950
**Terry Ray RABAN, Petitioner,**
**v.**
**The INDUSTRIAL COMMISSION of Arizona, Respondent,**
**Duval Sierrita Corporation, Respondent Employer,**
**Duval Sierrita Corporation, Respondent Carrier.**
**No. I CA–IC 1204.**

Court of Appeals of Arizona,
Division 1,
Department C.
Oct. 28, 1975.
Rehearing Denied Nov. 19, 1975.

Davis, Eppstein & Tretschok by Robert W. Eppstein, Tucson, for petitioner.

Greg L. Folger, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Twitty, Sievwright & Mills by John F. Mills, Phoenix, for respondents employer and carrier.

## OPINION

WREN, Judge.

We are asked to review a determination by The Industrial Commission that petitioner had incurred no loss of earning capacity as a result of a permanent unscheduled disability under the Workmen's Compensation Act. We affirm the decision.

Petitioner, Terry Ray Raban, suffered a back injury on October 8, 1971 while employed for respondent employer, Duval Sierrita Corporation (Duval), for whom he had worked since 1967 as a heavy equipment operator. As a result of the injury, surgery was performed on his back. One month after the surgery he returned to work for Duval for a period of two weeks to relieve a vacationing foreman. In March, 1972 petitioner again returned to his job of heavy equipment operator with the same employer, and worked until October 18, 1972, when he terminated his employment and thereafter devoted full time to an automobile steam cleaning business he had acquired prior to the injury.

On October 3, 1973 the presiding hearing officer issued a Decision Upon Hearing and Findings and Award for Unscheduled Permanent Partial Disability, determining that petitioner's medical condition had become stationary on May 18, 1973, and that he sustained a ten per cent functional disability. On January 11, 1974 an award by The Industrial Commission held that petitioner had suffered no loss of earning ca-

pacity, in that he had demonstrated a post-operative ability to perform his regular duties in his employment with Duval, and had voluntarily quit his job to devote full time to his own business.

Petitioner contends that (1) the evidence does not support the determination that he had sustained no loss of earning capacity; (2) the hearing officer erred in refusing to permit interrogatories to be filed after the time prescribed by The Industrial Commission's Rules of Procedure; and (3) the hearing officer erred in admitting certain motion picture film into evidence.

## LOSS OF EARNING CAPACITY

■ In determining whether there was a loss of earning capacity, petitioner asserts that the hearing officer should not have taken into consideration his post-injury earnings with Duval, since his condition was not then medically stationary. We do not agree. Petitioner's argument carries the assumption that his physical disability was greater at the time it became stationary than at the time of the injury or surgery. Such an assumption is supported neither by medical testimony nor legal authority. Furthermore, from March until October, 1972, a period of over six months, petitioner worked continuously at his regular pre-injury work as a heavy equipment operator, and for wages at least equal to those previously earned. The hearing officer's determination that petitioner had suffered no loss of earning capacity was therefore supported by the proposition that post-injury earnings may create a presumption of commensurate earning capacity. *Maness v. Industrial Commission,* 102 Ariz. 557, 434 P.2d 643 (1967); *Shroyer v. Industrial Commission,* 99 Ariz. 266, 408 P.2d 406 (1965); *Turley v. Industrial Commission,* 10 Ariz.App. 21, 455 P.2d 470 (1969).

■ Moreover, at the time he terminated his job he was able to perform the work satisfactorily; it was available and similar to that which he had done prior to the injury. In addition, the hearing officer found that petitioner had voluntarily terminated his employment in order to run his own expanding business. The Commission's findings in this regard we find to be fully supported by the evidence and therefore binding upon this Court. See *Powell v. Industrial Commission,* 102 Ariz. 11, 423 P.2d 348 (1967).

■ It is to be noted that petitioner testified at the hearing that operation of certain of Duval's equipment caused him to have pain, and made it difficult for him to straighten his body. He stated that he quit his job because of this pain and difficulty. However, the Commission found that the permanent disabilities of petitioner were not of a nature severe enough to have reduced his earning capacity. The purpose of Workmen's Compensation legislation is not to compensate for difficulty and pain, but for lost earning capacity. *See White v. Industrial Commission,* 87 Ariz. 154, 348 P.2d 922 (1960); *Maness v. Industrial Commission,* supra; *Moore v. Industrial Commission,* 12 Ariz.App. 328, 470 P.2d 476 (1970).

■ When an injured person returns to essentially the same type of work he was doing prior to the injury, has steady employment, and earns at least as much money for his labors, he cannot be heard to complain that his earning capacity has been diminished.

## INTERROGATORIES

■ Petitioner next claims error in that the hearing officer sustained respondent carrier's objection to interrogatories aimed at discovering whether surveillance motion pictures of petitioner had been made. The objection was aimed at petitioner's failure to file the interrogatories at least forty days prior to the scheduled hearing, as required by Rule 44 of The Industrial Commission's Rules of Procedure.

Petitioner urges that this time requirement should have been waived by the hearing officer, because petitioner did not learn of the possibility that surveillance movies might have been made of him operating his

auto steam cleaning business until 36 days prior to the hearing, and the interrogatories were submitted the following day. He thus asserts the novel position that since he did not ascertain the possible existence of the film prior to the forty day limitation the delay in submitting the interrogatories should have been excused. Again, we do not agree. Such an argument might well be likened to "putting the cart before the horse."

An obvious purpose of discovery procedures in Industrial Commission hearings is to *discover* that which was previously unknown, i. e., whether motion pictures had been taken. Interrogatories are useful tools for that purpose, and were available to petitioner well in advance of the time requirement of Rule 44. Strict adherence to the rule was within the discretion of the hearing officer, and the facts here do not justify an assertion by this Court that there was an abuse of that discretion in failing to disregard the irregularity.[1]

After the ruling that the carrier need not respond to the untimely interrogatories, petitioner attempted to utilize A.R. S. § 23–945 and § 23–946 by filing with The Industrial Commission, on April 18, 1974, a request labeled Petition on Validity of Order on Request for Stay of Proceedings. The petition was protested by Duval and refused on procedural grounds by legal counsel for the Commission.

We find that the petition was inappropriate and properly denied. The language of A.R.S. § 23–945 restricts its application to challenging orders of the Commission relating to administrative functions within the various branches of the department, and not to the processing or adjudicating of workmen's compensation matters by a hearing officer.[2]

## MOTION PICTURE FILM

In attempting to show that petitioner had suffered no loss of earning capacity as a result of his physical disability, Duval obtained the services of an investigator who took surveillance motion pictures of petitioner working at his auto cleaning business following the termination of employment with Duval.

Petitioner claims that there was an insufficient foundation under *Powell v. Industrial Commission*, 4 Ariz.App. 172, 418 P.2d 602 (1966), vacated on other grounds at 102 Ariz. 11, 423 P.2d 348 (1967), for the admission of the pictures into evidence. He argues that the criteria set forth in *Powell* were not met, in that the witness projecting the film at the hearing had not checked the speed of the camera used; that the projector itself had a variable speed control; and that he had only been "told" that the way to adjust the speed of the projector was by a "flicker" adjustment. After witnessing the film, petitioner testified that the speed of his movements was depicted as too fast in some parts of the movie and too slow in others. Historically, motion pictures were frequently objected to and sometimes excluded on the theory that they afforded manifold opportunities for fabrication and distortion. It is, of course, common knowledge that pictures showing a person in action may be made very deceptive.

---

1. Rule 57, Rule of The Industrial Commission.
"Rule 57. Sanctions . . .. The presiding hearing officer or the Commission may, in his or its sound discretion, relieve the party of the sanctions imposed for his failure to abide by these rules if good cause therefor is shown."

2. As defined by A.R.S. § 23–901(8) :
"8. 'Order' means and includes any rule, regulation, direction, requirement, standard, determination or decision other than an award or a directive by the commission or a hearing officer relative to any entitlement to compensation benefits, or to the amount thereof, and any procedural ruling relative to the processing or adjudicating of a compensation matter."

However, as noted in McCormick 6n Evidence, 2d Ed. § 214 p. 533:

"Even those older decisions which upheld the admission of motion pictures appear to have done so on the basis of elaborate foundation testimony detailing the methods of taking, processing, and projecting the film. More recently, however, it appears to have become generally recognized that, as with the still photograph, the reliability and accuracy of the motion picture need not necessarily rest upon the validity of the process used in its creation, *but rather may be established by testimony that the motion picture accurately reproduces phenomena actually perceived by the witness.* . . ." (Emphasis added.)

In *Powell,* as noted by the court itself, no attempt was made to set forth the various rules governing the admission of motion picture film into evidence. The decision merely struck down the receipt into evidence of film that had *admittedly* been "speeded up", and which depicted claimant's movements as being faster than they actually were. The court explained:

"[Motion pictures] are not admissible unless the person offering the pictures show they are a true reproduction of the scenes . . .." *Powell v. Industrial Commission,* 4 Ariz.App. at 180, 418 P.2d at 610.

■ The authenticating evidence in the case *sub judice* differed substantially from that in *Powell,* in that here there was no evidence of any inaccuracies other than petitioner's testimony that some of the film was too fast and some too slow. The person operating the camera at the scene was the same person who projected the film before the hearing officer. He testified that the motion pictures being shown accurately depicted what he had observed as to petitioner's activities. He further related that he had been instructed to adjust the projector until the flicker disappeared, at which time it projected 16 frames per second.

The hearing officer was present at the hearing and observed the proceedings as the fact-finding body. It was his prerogative to weigh any contradictory evidence as to the use of the projector and the speed of the film being shown. In doing so he was free to judge the credibility of the photographer-projectionist-witness when the latter testified under oath that the moving pictures being shown were an accurate portrayal of what he had personally observed while using the camera.

On the basis of such foundation testimony, we find no quarrel with the ruling that the motion pictures were admissible in evidence. *See Long v. General Electric Co.,* 213 Ga. 809, 102 S.E.2d 9 (1958). Also *McCormick on Evidence,* 2d Ed. § 214, supra.

■ Likewise there can be no error in refusing petitioner's request to mark the projector as an exhibit in evidence. Our view of the projector in use in consideration of this appeal would be meaningless, as there would be no way for this Court to operate the machine and adjust the film in the same manner as was done before the hearing officer. Nor is there otherwise any necessity for preservation within the record of such demonstrative aids.

The award is affirmed.

NELSON, P. J., and STEVENS, J., Retired [3], concurring.

3. This case was taken under advisement prior to Judge STEVENS retirement.