661 P.2d 215

UNIVERSITY MECHANICAL CONTRACTORS, Petitioner Employer,

Argonaut Insurance Company, Petitioner Carrier,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

David Figueroa, Respondent Employee.

No. 1 CA–IC 2732.

Court of Appeals of Arizona, Division 1, Department C.

Jan. 11, 1983.

Rehearing Denied Feb. 22, 1983.

Review Denied Apr. 5, 1983.

Everett, Bury & Moeller, P.C. by J. Michael Moeller, Marshall Humphrey III, Tucson, for petitioner employer and carrier.

James A. Overholt, Acting Chief Counsel, The Indus. Com'n of Arizona, Phoenix, for respondent.

Rabinovitz & Dix, P.C. by David M. Waterman, Tucson, for respondent employee.

## OPINION

JACOBSON, Presiding Judge.

The issue presented here is whether when the injured workman returns to the same type of post-injury employment, without a change in physical disability, an award of the Industrial Commission increasing the amount of earning capacity is justified by the evidence.

The claimant respondent, David Figueroa, was originally injured on August 9, 1974, while employed by petitioner, University Mechanical Contractors, as a construction pipelayer. This injury ultimately resulted in an award for a permanent partial unscheduled disability. Following several hearings, not germane to the issues presented in this review, Mr. Figueroa's average monthly wage was established at the then statutory maximum of $1,000 and on March 13, 1978, a stipulated award was entered setting Mr. Figueroa's loss of earning capacity at 3.34% and awarding him the sum of $18.39 per month.

The present proceedings grew out of two petitions filed by Mr. Figueroa: one for reopening of the 1974 injury claiming new, additional or previously undiscovered physical or mental disability, and one for rearrangement or readjustment. Both of these petitions were denied and the denials were timely protested.

The two petitions were basically consolidated, hearings were held and an award issued which denied the petition to reopen, but granted the petition for rearrangement, increasing the loss of earning capacity to 12.02% and awarding increased benefits of $66.01 per month. No issue is raised by

either party as to the propriety of the denial of the petition to reopen. Petitioner employer and carrier seek review of the award, granting an increase in loss of earning capacity due to the 1974 industrial injury.

The facts relating to the petition for rearrangement are basically undisputed. Prior to the 1974 injury, Mr. Figueroa was employed in the construction industry as a laborer-pipelayer and was so employed at the time of his injury. Following his condition becoming stationary, Mr. Figueroa sought and obtained employment with construction companies engaged in laying pipelines. While the testimony indicated that because of his industrial back injury, Mr. Figueroa was unable to perform the heavy physical labor he performed before his injury, he became a heavy equipment operator and his physical limitations did not interfere with his work performance. As the Administrative Law Judge found, "In the course of these work periods no evidence of impairment precluded job accomplishment and such was never the cause of the termination of such job."

The testimony concerning the loss of earning capacity centered primarily on this post-injury employment. In 1977 and in 1978, Mr. Figueroa was employed by Cecil Baldwin Construction Company as an equipment operator and earned either $7.62 per hour or $8.56 per hour. In 1978, he also worked three months for Ground Hog Construction Company and returned to Baldwin Construction Company in September of 1978 where he was paid $6.25 and $6.75 per hour. In January, 1979, Baldwin Construction Company was paying him $7.00 per hour and in April, 1979 he again worked for Ground Hog Construction at $7.00 to $7.26 per hour as a pipelayer. In January, 1980, Mr. Figueroa worked for Cardi Construction Company at $6.50 per hour and for Empress Construction Company at $7.50 per hour. In 1981, he was working for Tri-W Equipment, Inc. at $9.16 per hour.

A labor market consultant, upon whom the Administrative Law Judge relied in finding an increase in loss of earning capacity, testified that based upon this employment history, the wages he was presently receiving "rolled back" to 1974 wages, using the comparative consumer price index, showed a loss of earning capacity of between 13.4% and 10.80%. This expert further testified that in his opinion Mr. Figueroa was capable of performing the duties of a heavy equipment operator, specifically in the area of pipeline laying.

When questioned concerning the fluctuations in the hourly rates of pay not only between employers, but with the same employer, the expert testified:

Each of these jobs is bid by the prospective companies, depending on what is in the contract as far as what is going to be paid, or whether it is a City of Tucson job, or a federal job or a private job.

These people who work on those projects are bound by whatever the agreement is per the contract regarding laborers, pipelayers, equipment operators, and foremen.

Now this is an arbitrative figure between the management of the company and whoever they are doing the work for.

When asked about the type of pre-injury and post-injury work and the difference in pre-injury and post-injury wages, the expert testified:

Q: Other than the fact that he now does backhoe operation in addition to pipelaying, is he doing the same kind of work he did before 1974?

A: He is being paid in the pay rate of a pipelayer, and he additionally is now performing the duties of a backhoe operator and a bulldozer operator.

He is in the same industry. He is performing additional duties. He is an equipment operator.

Q: So he is doing the same thing plus more?

A: That is correct.

Q: So any pay scale change between before 1974 or 1974 and now is purely economic?

A: Economic and also there are union considerations.

■ It is basically petitioners' contention that where an injured worker returns to the same type of employment that he engaged in prior to his injury, it is presumed that no loss of earning capacity ensues. *Sutton v. Industrial Commission,* 16 Ariz.App. 334, 493 P.2d 501 (1972); *Maness v. Industrial Commission,* 102 Ariz. 557, 434 P.2d 643 (1967). While this statement in a broad sense is true, it must be considered in light of A.R.S. § 23–1044(F) and the cases interpreting that section.

■ A.R.S. § 23–1044(F) provides that once a loss of earning capacity has been established, it can only be changed:

1. Upon a showing of a change in the physical condition of the workman subsequent to such findings and award arising out of the injury resulting in the reduction or increase of his earning capacity.

2. Upon a showing of a reduction in the earning capacity of the workman arising out of such injury where there is no change in his physical condition, subsequent to such findings and award.

3. Upon a showing that his earning capacity has increased subsequent to such findings and award.

Since the denial of the reopening in this matter, which no one questions, established that Mr. Figueroa has not suffered a change in his physical condition attributable to the 1974 injury, and since no increase in earning capacity is alleged, we are solely concerned with whether Mr. Figueroa proved a reduction in earning capacity under A.R.S. § 23–1044(F)(2). This requires a "showing of a reduction in the earning capacity ... *arising out of such injury* ...." (Emphasis supplied).

What Mr. Figueroa basically proved was that the wages he was receiving in the same type of employment in 1978, 1979, 1980 and 1981 "rolled back" to 1974 prices, were less than he was making in 1974. This might have been sufficient, if Mr. Figueroa also showed because of his injuries, he was unable to work as long hours, or that the type of work he could now perform in his prior employment considering his physical limitations was limited or unavailable, or

that he was unable to continue at his prior employment because of an increase in physical demands that his injury induced physical limitations would not allow him to perform. However, none of this evidence is present in the Administrative Law Judge's finding and in fact this type of evidence, if present, was impliedly rejected by the Administrative Law Judge's finding.

What is left is that the hourly rate for the type of work Mr. Figueroa was performing in 1974 had decreased in 1978, 1979, 1980 and 1981 rolled back to 1974 prices, as so testified to by the expert witness. These types of considerations were first addressed in *Whyte v. Industrial Commission,* 71 Ariz. 338, 344, 346, 227 P.2d 230, 233, 235 (1951), which held that the intent of the legislature under the predecessor of A.R.S. § 23–1044:

... was to furnish the commission with a yardstick by which it could with reasonable accuracy determine the diminished earning capacity of an injured employee and by the use of which no inequalities, inequities or injustices could arise. To do this it, of course, intended that the length of the yardstick to be used should at all times remain constant. It follows then that the legislature did not intend that wages received two, five or ten years after an employee has sustained an injury (depending upon when the injury becomes stationary), regardless of changes in business conditions during those periods where all wages have doubled, due to a business boom, or cut in two due to business depression, should be used by the commission as part of its formula in ascertaining the loss of his earning capacity.

\*   \*   \*   \*   \*   \*

... Therefore a reduction or increase in earning capacity occasioned by general business conditions and not due to the injury cannot be considered by the commission as a basis for fixing or adjusting the compensation of an injured employee.

This rationale is still valid today in determining petitions for rearrangement or readjustment under A.R.S. § 23–1044(F)(1–3).

Since the Administrative Law Judge's award in this matter is legally supportable only upon a finding that economic conditions justify an increase in loss of earning capacity, and this basis is not legally sufficient, the award must be set aside.

CONTRERAS and BROOKS, JJ., concur.