716 P.2d 407
**PIMA COUNTY BOARD OF SUPERVISORS, Petitioner Employer,**

**The Home Insurance Carrier, Petitioner Carrier,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Gilbert I. Jayme, Respondent Employee.**

**No. 18285–PR.**

Supreme Court of Arizona,
En Banc.

March 19, 1986.

Bury, Moeller & Humphrey by Kevin Miniat, J. Michael Moeller, Tucson, for petitioner Employer and petitioner Carrier.

Dennis P. Kavanaugh, Chief Counsel, Indus. Com'n, Phoenix, for respondent Indus. Comn.

Les Gilbertson, Tucson, for respondent Employee.

FELDMAN, Justice.

We have accepted review of this case to determine the allocation of the burden of proof in a rearrangement of workers' compensation benefits under A.R.S. § 23–1044(F)(3). The precise question is whether an insurance carrier seeking rearrangement of an award may satisfy its burden of proof by presenting evidence of changed employment leading to a worker's possible increased earning capacity, where the worker's own acts make it impossible to prove the amount of increase. We have accepted review pursuant to Rule 23, Ariz. R.Civ.App.Proc., 17A A.R.S. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. § 12–120.24.

### FACTS

Gilbert Jayme has a long history of back problems. He underwent laminectomies in 1966 and 1967. In 1972, while employed by Pima County, his back was injured again, requiring more surgery. In 1979 his compensation claim was closed with an unscheduled permanent partial disability. A.R.S. § 23–1044(C). The award included a stipulated 89.45 percent loss of earning capacity, based on a post-injury earning capacity of $75 per month as a self-employed cactus grower. The award resulted in a $349.87 monthly benefit.

In 1983 the insurance carrier petitioned for a rearrangement of the award pursuant to A.R.S. § 23–1044(F)(3), claiming that there had been an actual increase in Jayme's earning capacity, mandating a reduction in his monthly benefits. The Industrial Commission denied the rearrangement petition and the carrier protested. The facts adduced at the ensuing hearing showed that subsequent to the original award Jayme had become involved with his family in operating a trucking business and a Mexican pottery importing business. Whether he was in charge or merely "helping out" his family was hotly contested. Jayme claimed to be only a casual helper, but the administrative law judge (ALJ) found that he was not a credible witness and gave no weight to his testimony. The evidence also showed that Jayme was involved in selling pottery at swap meets, and went on five-day freight-hauling trips with his son. Both businesses were conducted almost exclusively on a cash basis and the few records which were kept were destroyed by either claimant or his family after initiation of the rearrangement proceedings. Consequently, the carrier was unable to come forward with any proof of claimant's actual earnings, a major factor in ascertaining increased earning capacity.[1] Due to the unique nature of the retail Mexican pottery business, no comparable salary or earnings for similar occupations could be computed by labor market specialists.

In part, the ALJ did not rearrange the award because he thought the amount of post-accident earning capacity was *res judicata* absent a change in claimant's medical condition or a showing that the jobs claimant could now perform were unavailable at the time of the original award. Although the ALJ found that Jayme was involved in the family business, he concluded that the carrier had failed to prove that Jayme earned more than the $75 per month recognized in the original award as his

---

1. "Earning capacity" is a term of art. It is not solely a function of wages earned but also includes many other factors such as age, health and skills. A partial list of factors used to determine earning capacity is found in A.R.S. § 23–1044(D).

post-accident earning capacity. Therefore, the carrier's petition was denied. The carrier brought a special action[2] in the court of appeals, which affirmed. *Pima County Board of Supervisors v. Industrial Commission*, 1 CA–IC 3261, memorandum decision, filed March 28, 1985. The court of appeals held that increased earning capacity alone is a sufficient basis for a rearrangement under A.R.S. § 23–1044(F)(3), and stated that "the evidence demands a rearrangement" (slip op. at 7). However, it affirmed the denial because the ALJ had also found that no suitable work was reasonably available in the open labor market. *Id.* We accepted review on the issue of the allocation of the burden of proof.

## DISCUSSION

A.R.S. § 23–1044(F) provides that after an unscheduled award based upon reduced monthly earning capacity has been made pursuant to A.R.S. § 23–1044(C) it

shall be subject to change in any of the following events:

1. Upon a showing of a change in the physical condition of the workman subsequent to such findings and award arising out of the injury resulting in the reduction or increase of his earning capacity.

2. Upon a showing of a reduction in the earning capacity of the workman arising out of such injury where there is no change in his physical condition, subsequent to the findings and award.

3. Upon a showing that his earning capacity has increased subsequent to such findings and award.

Petitioner argues that under subsection 3, when a self-employed claimant by his own action prevents the carrier from obtaining proof of post-accident earning capacity by failing to keep or intentionally destroying records, and no open labor mar-

ket comparisons are available, the burden of showing no increase in earning capacity should shift to the employee. Respondent worker argues that the burden of proof remains on the petitioner and that the doctrine of *res judicata* bars the rearrangement in this case.

We begin our analysis with basic principles. The purpose of workers' compensation is not to compensate for difficulty and pain but only for lost earning capacity. *Raban v. Industrial Commission*, 25 Ariz.App. 159, 161, 541 P.2d 950, 952 (1975); *Franco v. Industrial Commission*, 130 Ariz. 37, 40, 633 P.2d 446, 449 (App. 1981). Lost earning capacity for unscheduled injury cases is determined by A.R.S. § 23–1044(C) and (D). *See Gomez v. Industrial Commission*, 148 Ariz. 565, 716 P.2d 22 (1986). Rearrangement proceedings are intended to ensure that the award is commensurate with the actual amount of lost earning capacity.

After findings and an award are made, the doctrine of *res judicata* operates to bar relitigation of issues which were or could have been decided at that proceeding. *Stainless Steel Specialty Manufacturing Company v. Industrial Commission*, 144 Ariz. 12, 15, 695 P.2d 261, 264 (1985). However, the doctrine of *res judicata* in compensation cases differs from the doctrine in ordinary civil cases; compensation cases balance the need for finality and judicial efficiency against the need for continuing jurisdiction to effectuate the purposes of the act and to accommodate changes in earning capacity caused by either the employee's physical condition or the labor market. *Id.* at 16, 695 P.2d at 265. In order to effectuate the remedial purposes of the act and to prevent perverse results, the compensation law has both reopening and rearrangement[3] provisions. These

---

**2.** A.R.S. § 23–951.

**3.** Reopening is the process whereby a closed claim is opened and re-examined. Compensation is redetermined based on "new, additional or previously undiscovered temporary or permanent condition." *See* A.R.S. § 23–1061(H).

Reopening is different from rearrangement in that it is concerned with changes in physical condition causally related to the original injury which result in new medical expenses as well as lost earning capacity. Reopening overlaps with rearrangement in that a rearrangement under

statutes constitute exceptions to the doctrine of *res judicata.* *Id.* Thus, when there have been changes in either the worker's physical condition or in external labor market conditions, the doctrine of *res judicata* does not prevent a redetermination of earning capacity. *Id.*

■ Usually rearrangement cases involve changes in physical condition as an indicator of change in earning capacity. *Stainless Steel Specialty, supra.* Claimant argues that in the present case, because there has been no change in his physical condition, the claim is *res judicata* and rearrangement should be denied. This argument would have force only if this proceeding had been brought under A.R.S. § 23–1044(F)(1), which specifically governs increases or reductions in earning capacity based on changes in physical condition. Either the carrier or the worker may utilize subsection 1, but whoever petitions must allege and prove a physical change affecting earning capacity. *Hunt v. Industrial Commission,* 107 Ariz. 569, 570, 490 P.2d 575, 576 (1971).

■ Subsection 2 provides for a *worker* to petition for rearrangement where, although there has been *no change in physical condition* subsequent to the findings and award, there has been a reduction in his earning capacity. Subsection 2 requires that the reduction be causally related to the injury upon which the award was based. Furthermore, any change in the marketability of the worker's labor must be measured in relation to the facts existing at the time of the original award. *Gallegos v. Industrial Commission,* 144 Ariz. 1, 5, 695 P.2d 250, 254 (1985); *University Mechanical Contractors v. Industrial Commission,* 135 Ariz. 365, 368, 661 P.2d 215, 218 (App.1983). However, changes in general business conditions making employment unavailable provide no basis for rearrangement unless the work-related disability makes the worker less likely to find employment. *University Mechanical Con-*

*tractors v. Industrial Commission,* 135 Ariz. at 368, 661 P.2d at 218; *Whyte v. Industrial Commission,* 71 Ariz. 338, 344–46, 227 P.2d 230, 233–35 (1951).

■ Subsection 3, on the other hand, effectively allows the *carrier* to petition for rearrangement whenever there has been any increase in earning capacity. There is no need to show a causal relationship between the injury and the increased earning capacity. All that is necessary is that the increase occur. Therefore, in actions under subsection 3, anything that demonstrates increased earning capacity is relevant. *Laker v. Industrial Commission,* 139 Ariz. 459, 462, 679 P.2d 105, 108 (App.1984). This furthers the policy of the act to compensate workers only for lost earning capacity.

■ It is apparent from the foregoing that respondent's argument that the carrier must show a change in his physical condition is incorrect in a subsection 3 rearrangement. All that the carrier need show to prevent application of the bar of *res judicata* is that there has been an increase in earning capacity. An external, economic change which provides some evidence of actual change in earning capacity is sufficient. *See Laker v. Industrial Commission,* 139 Ariz. at 462, 679 P.2d at 108 (allegation of increase in earnings presupposes a change external to the claimant). A change in occupation, rather than one of employers, is such evidence. *Gallegos, supra.* Inflationary changes are not considered. *Whyte v. Industrial Commission, supra.*

■ Although earning capacity is not solely based on wages, increased post-award earnings do create the presumption of an increase in earning capacity commensurate with the wages earned. *Raban v. Industrial Commission,* 25 Ariz.App. at 161, 541 P.2d at 952 (1975). However, since the actual earnings could be an aberration, the job could be temporary or a

A.R.S. § 23–1044(F)(1) is based on changed medical condition, but it applies only to changes in earning capacity; a reopening provides for

payment of medical bills for temporary or permanent conditions which do not necessarily impact on earning capacity.

number of other factors could make the figure misleading, the employee has the right to offer rebutting evidence. Thus, if a carrier shows an increase in earnings, the burden shifts to the claimant to show that the presumption is incorrect and that in fact there has been no increase in earning capacity. *Laker v. Industrial Commission,* 139 Ariz. at 462, 679 P.2d at 108.

▪ The record below indicates that several methods can be used to determine earning capacity. In the present case, labor market specialists were unable to estimate the earning range of one in the business of importing and selling Mexican pottery. Because the business is entrepreneurial, there could be considerable variation in Jayme's income depending upon his effort and market conditions. Further, claimant's actual earnings were unavailable because claimant or his son destroyed the few records which were kept. Although the carrier showed that claimant had changed his occupation (*see Gallegos, supra*) from that of a self-employed cactus grower on which the original award was based to that of pottery importer, it was unable to prove any actual change in the amount of the earnings.[4]

▪ Thus, we are squarely presented with the question of who has the burden of proof as to actual earning capacity in this situation. Enough change has been shown for purposes of subsection 3 by the proof of new self-employment. *See Gallegos, supra.* In our view evidence that claimant concealed his earnings from the carrier satisfies the carrier's obligation to quantify the change. Concealment is unnecessary when the claimant's income has not increased. The courts cannot sanction the use of the law to perpetrate a fraud; both the carrier and the claimant have duties of honesty under the compensation act. It is not an onerous burden for self-employed persons to maintain and produce adequate records of their earnings and expenses. We cannot encourage or allow workers to use the "underground economy" as an adjunct to workers' compensation benefits. Therefore, we hold that in rearrangements, if the carrier comes forward with evidence of a probable change in earning capacity, but the proof of amount of change is unavailable due to the actions of the claimant, the burden of going forward with evidence shifts to the claimant. He must rebut the change in circumstance and the consequent presumption of increased earnings by providing evidence that there has been no change in earning capacity. *See Laker v. Industrial Commission, supra; cf. Wiedmaier v. Industrial Commission,* 121 Ariz. 127, 130, 589 P.2d 1, 4 (1979). If the employee, through his own actions, has made the proof unavailable, then his failure to produce rebuttal evidence permits the ALJ to infer that his earning capacity has increased and to make the best conclusion possible from the evidence as to the amount.

▪ We wish to emphasize the narrow scope of this decision. In the ordinary case, the claimant will be employed and earnings records will be available to the carrier. The burden of proof normally lies with the party seeking rearrangement, and this rule is unchanged by this decision. When other means of determining changes in earning capacity are available, such as job market comparisons or actual earnings, they should be used and the burden of proof and obligation to go forward with evidence remains on the petitioning party.

## CONCLUSION

▪ Having found that the carrier had failed to sustain its burden to show in-

---

4. We note that A.R.S. § 23–1047(D) requires claimant to file annual reports of his earnings and that failure to do so allows the carrier to suspend further compensation payments. The ALJ found that claimant had filed false annual reports. The reasons for the carrier's failure to avail itself of this remedy are not in the record. We view this requirement as a strong indication of legislative intent to require workers to provide accurate and updated information to the carriers that pay their disability benefits. The integrity of the compensation system depends upon the availability of accurate information. The worker is not entitled to benefits after the disability has ended nor should he receive a greater benefit than is due him.

creased earning capacity on the basis of Jayme's actual earnings in his new occupation, the ALJ then looked to other proof of possible increased earning capacity. He found that the carrier also had failed to establish that other jobs within the worker's post-accident physical ability were reasonably available, and therefore he concluded that no increased earning capacity had been demonstrated. The court of appeals affirmed for this latter reason.

Since we have held that proof of change in occupation, combined with proof of income in the new occupation and the worker's concealment of information regarding the amount of such earnings are sufficient to raise a presumption of increased earning capacity under A.R.S. § 23-1044(F)(3) and permit a finding as to the actual amount, the question of availability of other suitable jobs in the marketplace becomes irrelevant.

Therefore, the decision of the court of appeals is vacated. The award is set aside and the case is remanded for proceedings not inconsistent with this opinion.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and CAMERON, JJ., concur.