NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

ALFRED P. NOLAN, *Petitioner Employee*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

JOSEPH PAINTING COMPANY, *Respondent Employer*,

CONTINENTAL WESTERN INSURANCE COMPANY,
*Respondent Carrier*.

No. 1 CA-IC 19-0025
FILED 3-31-2020

Special Action - Industrial Commission
ICA Claim No. 20112-920342
Carrier Claim No. 10068951
The Honorable Amy L. Foster, Administrative Law Judge

**AFFIRMED**

COUNSEL

Law Office of Eric C. Awerkamp, Mesa
By Eric C. Awerkamp
*Co-Counsel for Petitioner Employee*

Toby Zimbalist, Esq., Phoenix
By Toby Zimbalist
*Co-Counsel for Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Gaetano J. Testini
*Counsel for Respondent*

Lundmark Barberich LaMont & Slavin PC, Phoenix
By Kirk A. Barberich
*Counsel for Respondent Employer and Carrier*

---

**MEMORANDUM DECISION**

Judge Samuel A. Thumma delivered the decision of the Court, in which Judge Randall M. Howe and Chief Judge Peter B. Swann joined.

---

**T H U M M A**, Judge:

¶1        Alfred P. Nolan challenges an Industrial Commission of Arizona (ICA) award finding that his earning capacity increased since the closure of his claim in 2015. Nolan argues that, because the 2015 closure was based on a stipulated earning capacity of 20 work hours per week, Respondents are precluded from showing that he can now work a 40-hour week. Concluding that *Gallegos v. Indus. Comm'n*, 144 Ariz. 1 (1985) is controlling, and that sufficient evidence supports the findings, the award is affirmed.

## FACTS AND PROCEDURAL HISTORY

¶2        Nolan was injured in July 2010 while working for Respondent Employer Joseph Painting when he fell about 20 feet into a wastewater tank that he was coating with resin. He suffered serious injuries including broken ribs, a broken hip, a punctured lung, injuries to his spine, right shoulder and wrist and a traumatic hernia that required implants.

¶3        When Respondent Carrier Continental Western Insurance Company issued a notice in September 2014 closing the claim with no permanent impairment, Nolan filed a challenge. The parties then settled the case by signing a stipulation and requesting that the Administrative Law Judge (ALJ) issue an award. Among other things, the stipulation provided Nolan was medically stationary; had an unscheduled, permanent, whole person impairment; and was entitled to permanent partial disability

2

benefits of $832.36 per month, based on a 20-hour work week. The ALJ adopted the stipulations and issued a corresponding award in July 2015.

¶4        In March 2018, Respondents filed a Petition for Rearrangement or Readjustment, claiming Nolan had no medical restrictions limiting him from working 40 hours per week as a parking lot cashier. In June 2018, the ICA issued a summary award finding Nolan was entitled to a reduced benefit based on a 40-hour work week. Nolan requested a hearing.

¶5        At the hearing, Nolan and Doctors J. Carvel Jackson and Kevin Ladin testified. Dr. Jackson evaluated Nolan in April 2012 and had been treating him since August 2016, while Dr. Ladin performed an independent medical examination in October 2018. The material dispute between their testimony was Dr. Jackson's opinion that Nolan should not work more than 20 hours per week, while Dr. Ladin found no medical reason why he could not work 40 hours per week. The parties stipulated that parking lot cashier was a proper job for Nolan. Nolan argued Respondents were precluded from arguing that Nolan could work 40 hours per week given the 2015 stipulation that he could only work 20 hours per week and that Respondents failed to show an increased earning capacity compared to July 2015 that met the criteria for rearrangement. *See* Ariz. Rev. Stat. (A.R.S.) § 23-1044(F) (2020).[1]

¶6        The ALJ found that the 2015 award did not preclude her from addressing the alleged increase in earning capacity. She also found more probably correct Dr. Ladin's testimony that Nolan could work 40 hours per week. Thus, the ALJ concluded that Respondents had met the criteria for rearrangement by showing an increase in earning capacity and reduced Nolan's loss of earning capacity to $508.17 per month. The ALJ affirmed on review, finding Respondents had shown a change in Nolan's ability to work more than 20 hours per week as compared to the 2015 award. Nolan timely seeks review by this court.

---

[1] Absent material revisions after the relevant dates, statutes cited refer to the current version unless otherwise indicated.

## DISCUSSION

### I.    The ALJ Properly Found Res Judicata Did Not Preclude Rearrangement.

¶7        This court defers to the ALJ's factual findings but reviews questions of law de novo. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270 ¶ 14 (App. 2003). The primary obstacle to Nolan's preclusion argument is *Gallegos v. Indus. Comm'n*, 144 Ariz. 1 (1985). A review of res judicata principles in worker's compensation cases provides context for *Gallegos*.

¶8        Compared to typical civil litigation, finality principles are applied differently in worker's compensation cases. *See Stainless Specialty Mfg. Co. v. Indus. Comm'n*, 144 Ariz. 12, 16 (1985). An accepted but closed claim may be reopened upon a showing of a "new, additional or previously undiscovered temporary or permanent condition." A.R.S § 23-1061(H). This provision acknowledges the difficulty of accurately predicting the future physical condition of an injured worker. "'[O]ne of the main advantages of the reopening device [is] that it permits a commission to make the best estimate of disability it can at the time of the original award, although at that moment it may be impossible to predict the extent of future disability, without having to worry about being forever bound by the first appraisal.'" *Stainless Specialty*, 144 Ariz. at 16 (quoting 3 Arthur Larson, *The Law of Workers' Compensation* § § 81.31(a) at 15–554.16 to 554.18). Under A.R.S. § 23-1044(F), either party can petition for rearrangement of disability benefits when a loss of earning capacity has occurred due to a change in the worker's physical condition (Subsection 1), due to non-physical factors (Subsection 2) or when the worker's earning capacity has increased (Subsection 3).

¶9        These provisions form a system by which benefits can consistently reflect the changing circumstances of the worker's condition and the job market. "[C]ompensation cases balance the need for finality and judicial efficiency against the need for continuing jurisdiction to effectuate the purposes of the act and to accommodate changes in earning capacity caused by either the employee's physical condition or the labor market." *Pima County Bd. of Sup'rs v. Indus. Comm'n*, 149 Ariz. 38, 43 (1986).

¶10        As applied, Respondents relied on Subsection 3, which allows for adjustment of benefits upon a "showing that the employee's earning capacity has increased" after an award. A.R.S. § 23-1044(F)(3). In *Gallegos*, a worker filed a rearrangement petition to show a reduced earning capacity under Subsections 1 and 2. 144 Ariz. at 2. In that case, the worker

temporarily could not work after he hurt his back. *Id*. When he could work again, he got a new job with a moving company at almost double his prior hourly rate. *Id*. He lasted six weeks before his doctor told him he could not be doing that type of work and he got a new job for a reduced hourly rate. *Id*. Meanwhile, the ICA issued an award finding no loss of earning capacity based on the erroneous understanding that he was still working as a mover at the higher rate. *Id*. That award became final when no party protested it. *Id*. Three years later, the worker petitioned for rearrangement, arguing his earning capacity was lower than what was stated in the award. *Id*. The ICA denied his petition because his "actual" earning capacity had not changed since the award was issued, even though the award declared that it was higher. *Id*.

¶11        The Arizona Supreme Court reversed that denial. After discussing res judicata principles under the rearrangement statute, *Gallegos* stated that both parties were bound by the final factual findings in the award, regardless of the error:

> [S]ubsection 2 of the rearrangement statute [A.R.S. § 23–1044(F)(2)] is applicable to all situations where, subsequent to the final award, there has been a reduction in earning capacity causally related to the previous injury. Where the first award has become final, the question of change is to be measured by comparing the facts determined by the final findings and award with those existing at the time of the rearrangement petition, even if the earlier findings have been made incorrectly.

*Id*. at 5-6.[2]

¶12        Even though *Gallegos* addressed Subsections 1 and 2 of the rearrangement statute, the same rationale applies to Subsection 3. As applied, the stipulated lost earning capacity incorporated into the 2015 award was based on a 20-hour work week. Further, the stipulation leading up to the 2015 award did not preclude reopening or rearrangement.  Under

---

[2] In a more recent case, this court held that *Gallegos* applies to rearrangement, but not reopening. *Cornelson v. Indus. Comm'n*, 199 Ariz. 269, 273 (App. 2001) (rejecting *Epstein's Custom Carpentry v. Indus. Comm'n*, 155 Ariz. 284 (App. 1987), which held *Gallegos* applied to both rearrangement and reopening).

*Gallegos*, the date of comparison for purposes of determining a change in earning capacity in this case is the July 2015 award, which found Nolan's earning capacity was based on a 20-hour work week. Both parties are bound by that finding. Nolan cannot preclude Respondents from showing that he now has an increased earning capacity when compared to that final award.

¶13 Nolan also argues that, because the consensus medical opinion in 2015 was that he should be able to work 40 hours per week, Respondents have failed to show any change in earning capacity by showing that he can now work 40 hours per week. But this ignores the stipulated factual basis of the 2015 final award that established a 20-hour work week, which is precluded by *Gallegos*. Even if the 20-hour work week finding was erroneous, the parties are bound by it. For these reasons, the ALJ's decision properly applied *Gallegos*.

## II.     The Evidence Supports the Award.

¶14 Nolan argues the evidence does not support the ALJ's adoption of Dr. Ladin's opinion over Dr. Jackson's. "The burden of proof normally lies with the party seeking rearrangement." *Pima County Bd. of Sup'rs v. Indus. Comm'n*, 149 Ariz. 38, 45 (1986). This court does not re-weigh evidence and, when reasonable evidence supports an ALJ's factual finding, it will be affirmed. *Kaibab Indus. v. Indus. Comm'n*, 196 Ariz. 601, 608 ¶ 21, 609 ¶ 25 (App. 2000).

¶15 In *Pima County Board of Supervisors*, the Arizona Supreme Court stated:

> Subsection 3 [A.R.S. § 23-1044(F)(3)] effectively allows the *carrier* to petition for rearrangement whenever there has been any increase in earning capacity. There is no need to show a causal relationship between the injury and the increased earning capacity. All that is necessary is that the increase occur. Therefore, in actions under [S]ubsection 3, anything that demonstrates increased earning capacity is relevant. This furthers the policy of the act to compensate workers only for lost earning capacity.

149 Ariz. at 44 (citation omitted). Applying this standard, and recognizing the conflicting testimony by Drs. Jackson and Ladin, Nolan has shown no

abuse of discretion in the ALJ's factual findings. The ALJ's adoption of Dr. Ladin's opinion over Dr. Jackson's was not error.

## CONCLUSION

¶16        The award is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:  AA