NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# Arizona Court of Appeals
## Division One

---

PHOENIX UNION HIGH SCHOOL
DISTRICT NO. 210, *Petitioner Employer*,

ARIZONA SCHOOL ALLIANCE FOR
WORKERS COMPENSATION POOL, *Petitioner Carrier*,

v.

THE INDUSTRIAL COMMISSION OF
ARIZONA, *Respondent*,

MARIA ESTRADA, *Respondent Employee*.

No. 1 CA-IC 20-0019
FILED 12-22-2020

---

Special Action - Industrial Commission
No. 20120-670274
Carrier Claim No. 2011026044A
The Honorable C. Andrew Campbell, Administrative Law Judge

**AWARD SET ASIDE**

---

COUNSEL

Wright Welker & Pauole PLC, Phoenix
By Linnette R. Flanigan
*Counsel for Petitioner Employer*

Wright Welker & Pauole PLC, Phoenix
By Shannon Lindner
*Counsel for Petitioner Insurance Carrier*

Industrial Commission of Arizona, Phoenix
By Gaetano J. Testini
*Counsel for Respondent*

Snow Carpio & Weekley PLC, Phoenix
By Dennis R. Kurth
*Counsel for Respondent Employee*

---

## MEMORANDUM DECISION

Judge Cynthia J. Bailey delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Kent E. Cattani joined.

---

**B A I L E Y**, Judge:

¶1        Phoenix Union High School District No. 210 ("PUHS") and Insurance Carrier The Arizona School Alliance for Workers Compensation, Inc. (collectively, "Defendants") appeal the Industrial Commission of Arizona's ("ICA") decision denying their petition for rearrangement of disability compensation awarded to a PUHS employee.  For the following reasons, we set aside the decision.

### FACTS AND PROCEDURAL HISTORY

¶2        In March 2012, Maria Estrada fell and injured her shoulder while working as a custodian for PUHS.  In February 2013, Estrada's attending orthopedic surgeon, Dr. Evan Lederman, concluded Estrada was incapable of returning to her previous job and recommended work restrictions ("February 2013 Assessment").

¶3        In April 2013, vocational consultant Erin Welsh provided a loss of earning capacity recommendation that stated, "[u]tilizing the work restrictions outlined by Dr. Lederman . . . Estrada would be capable of performing unskilled, entry-level work, part-time such as Fast Foods Worker."  She noted "[t]hese positions are hired on a part-time basis, approximately 25 hours per week . . . equat[ing] to a date of injury monthly

earning ability equal to $828.68," and concluded Estrada was entitled to permanent partial disability benefits of $1,019.54 per month.

¶4        About a month later, in May 2013, Dr. Lederman referred Estrada to another medical provider for a functional capacity evaluation ("FCE"). The FCE concluded Estrada's functional abilities were a good match with an office custodian. Dr. Lederman later testified that the FCE found Estrada's work capacity "a little bit greater" than what he had determined in the February 2013 Assessment.

¶5        In June 2013, the ICA awarded Estrada $1,019.54 per month for loss of earning capacity, finding her "[m]edical limitations would not preclude [her] performing the duties of a fast food worker, 25 hours per week, or comparable work earning an average monthly sum of $828.69 based on the date of injury rates, thereby sustaining the stated loss of earning capacity" ("2013 Award"). The ICA cited the February 2013 Assessment and Welsh's loss of earning capacity recommendation, but not the FCE, as the basis for its award.

¶6        Shortly after the ICA issued the 2013 Award, Welsh provided an addendum to her initial loss of earning capacity recommendation ("Addendum") in which she stated, "Estrada would be capable of performing unskilled, entry-level work, as a Fast Foods Worker" or "performing the position of Housekeeper for a hotel/motel establishment." She ultimately recommended benefits "ranging from a low of $629.77 per month to a high of $746.07 per month." The 2013 Award did not incorporate the Addendum, and none of the parties protested the 2013 Award.

¶7        Several years later, in June 2017, Defendants' surveillance observed Estrada doing exercises that involved her shoulder. Defendants had Estrada examined by Dr. Amit Sahasrabudhe, and then filed a petition for rearrangement or readjustment of compensation based on a change in Estrada's physical condition in April 2018. *See* A.R.S. § 23-1044(F)(1). The ICA granted the petition and rearranged Estrada's loss of earning capacity award to zero. Estrada timely requested a hearing.

¶8        The ICA held an administrative hearing in which Drs. Sahasrabudhe and Lederman testified. Experts in loss of earning capacity analyses and labor market services also testified. Dr. Sahasrabudhe stated Estrada did not need any work limitations, but Dr. Lederman disagreed. Dr. Lederman said that although Estrada "had a fair bit of improvement over the years," it would still be unsafe for her to return to her former work

as a custodian, and permanent restrictions on her right shoulder were still in order.

**¶9**         After the hearing, the ICA issued a decision denying the petition for rearrangement, concluding there had been no change in Estrada's earning capacity as a result of any change in her physical condition or an increase in her earning capacity after the 2013 Award. *See* A.R.S. § 23-1044(F)(1), (3).

**¶10**         Defendants sought review of the decision, and the ICA issued a decision upon review correcting and clarifying several factual findings but affirming the rearrangement denial. Defendants petitioned for special action relief. This court has jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(2) and 23-951(A), and Arizona Rule of Procedure for Special Actions 10.

## DISCUSSION

**¶11**         Defendants argue the ICA's denial of their petition for rearrangement is contrary to the evidence; unsupported by its own findings; based on medical opinion that was contradictory and foundationally flawed; and contrary to controlling Arizona law.

I.      Standard of Review

**¶12**         When reviewing an ICA award, "[o]ur duty . . . is to determine whether the [ICA]'s award is supported by reasonable evidence." *Simmons v. Indus. Comm'n*, 248 Ariz. 245, 249, ¶ 13 (App. 2020) (quoting *Borsh v. Indus. Comm'n*, 127 Ariz. 303, 306 (1980)). "We view the facts and all inferences to be drawn therefrom in the light most favorable to upholding the ICA's findings and award," *France v. Indus. Comm'n*, 248 Ariz. 369, 371, ¶ 3 n.2 (App. 2020), and we will not reweigh the evidence, *see Wal-Mart v. Indus. Comm'n*, 183 Ariz. 145, 146–47 (App. 1995).

II.      Petition for Rearrangement

**¶13**         A carrier may petition for rearrangement or readjustment of disability compensation on the basis that there has been: (1) "a change in the [employee's] physical condition . . . resulting in the . . . increase of the employee's earning capacity"; or (2) "the employee's earning capacity has increased." A.R.S. § 23-1044(F)(1), (3).

**¶14**         To succeed under (F)(1), the carrier "must allege and prove a physical change affecting earning capacity." *Pima Cnty. Bd. of Supervisors v.*

*Indus. Comm'n*, 149 Ariz. 38, 44 (1986). To succeed under (F)(3), the carrier must show an increase in earning capacity; if it shows such an increase, "the burden shifts to the claimant to show that the presumption is incorrect and that in fact there has been no increase in earning capacity." *Id.* at 45. Under both subsections, "[w]here the first award has become final, the question of change is to be measured by comparing the facts determined by the final findings and award with those existing at the time of the rearrangement petition, even if the earlier findings have been made incorrectly." *Gallegos v. Indus. Comm'n*, 144 Ariz. 1, 5–6 (1985).

> A. Reasonable evidence supports the ICA's conclusion that there had been no change in Estrada's physical condition affecting her earning capacity.

¶15 Defendants first argue the ICA erred by finding no change in Estrada's physical condition affecting her earning capacity. They assert the ICA erroneously: (1) compared Estrada's physical condition as determined by the FCE rather than as determined by the February 2013 Assessment; (2) ignored *Gallegos*; (3) ignored allegedly uncontroverted evidence that Estrada's condition had improved; and (4) relied on foundationally unsound medical testimony. Although we agree that the ICA erred by comparing Estrada's physical condition as determined by the FCE rather than the 2013 Assessment, reasonable evidence supports the ICA's finding that no change in Estrada's physical condition affected her earning capacity.

¶16 In Finding 18, the ICA found "the work restrictions as set forth in the FCE of May 2013, and later adopted by Dr. Lederman, remain appropriate." However, because the 2013 Award was final, "the question of change [was] to be measured by comparing *the facts determined by the final findings and award* with those existing at the time of the rearrangement petition, even if the earlier findings have been made incorrectly." *Gallegos*, 144 Ariz. at 5–6 (emphasis added). The 2013 Award was based on the February 2013 Assessment and initial loss earnings analysis; it did not incorporate the FCE or the Addendum. Accordingly, the court erred by using the FCE restrictions for comparison.

¶17 Nevertheless, reasonable evidence supports the ICA's determination that there had been no change in Estrada's physical condition affecting her earning capacity. Although Dr. Lederman noted some improvement in Estrada's physical condition over the years, he stated that there was no basis for recommending a change in Estrada's 2013

restrictions.[1]   He also stated that as of his last evaluation of Estrada in August 2018, it would still be unsafe for Estrada to return to her former work as a custodian, and permanent restrictions on her right shoulder use were still in order.  Although Dr. Sahasrabudhe testified he did not think there was any basis for work restrictions, the court found Dr. Lederman to be more credible.  We must defer to the ICA's weighing of the evidence and credibility determinations.  *Carousel Snack Bar v. Indus. Comm'n*, 156 Ariz. 43, 46 (1988).

**¶18**        Defendants assert that the ICA erred by failing to recognize foundational flaws in Dr. Lederman's testimony.  However, Defendants stipulated to Dr. Lederman's qualifications, and cannot challenge them now on appeal.  *See Pulliam v. Pulliam*, 139 Ariz. 343, 346 (App. 1984) ("A party to an action cannot stipulate to one thing and then later change her mind and withdraw her consent.").  Defendants argue Dr. Lederman could not have offered an opinion on Estrada's condition because he did not conduct another FCE in 2018, but Dr. Lederman based his assessment of Estrada's condition on an assessment he performed in August 2018, within two months of the filing of the rearrangement petition.  *See* Ariz. R. Evid. 702; *Gallegos*, 144 Ariz. at 5–6.  Accordingly, Defendants' challenge to Dr. Lederman's testimony fails.  Reasonable evidence supports the ICA's finding that there had been no change in Estrada's physical condition resulting in an increase in her earning capacity.

> B.     The ICA erred by finding no increase in Estrada's earning capacity.

**¶19**        Defendants next argue the ICA erred by finding no increase in Estrada's earning capacity.  They argue the ICA arbitrarily disregarded uncontroverted evidence that Estrada could work forty hours a week.  We agree.

**¶20**        Although the ICA found that Estrada could work forty hours a week, it ultimately concluded that there had been no change in Estrada's earning capacity because "from the effective date of the closure of her claim to the present, there ha[d] never been a medical limitation regarding the

---

[1] It is unclear from the transcript whether Dr. Lederman was referring to the restrictions from the 2013 Assessment or the FCE.  However, we must view the record in the light most favorable to affirming the ICA's award. *France*, 248 Ariz. at 371, ¶ 3 n.2.

number of hours that [Estrada] could work in a given week." This conclusion incorrectly characterizes the 2013 Award.

¶21 As established, the point of comparison under subsections (F)(1) and (3) is "the facts determined by the final findings and award . . . even if th[ose] findings have been made incorrectly." *Gallegos*, 144 Ariz. at 5–6. The 2013 Award found "[m]edical limitations would not preclude [Estrada] performing the duties of a fast food worker, 25 hours per week, or comparable work earning an average monthly sum of $828.69," and it based its $1,019.54 award on a twenty-five-hour work week. The uncontroverted evidence at trial established Estrada could work forty hours per week, and testimony from the vocational expert established that full-time employment as a fast food worker would result in a loss of earning capacity of $746.07, as compared to the $1,853.71 loss of earning capacity from the 2013 Award. This constitutes "a showing that [Estrada's] earning capacity has increased after [the 2013 Award]," A.R.S. § 23-1044(F)(3), therefore the ICA erred by concluding there had been no such change.

## CONCLUSION

¶22 Because the ICA erred by finding no increase in Estrada's earning capacity, we set aside the decision denying Defendants' rearrangement petition.

