695 P.2d 250

**Philip GALLEGOS, Petitioner,**

v.

**INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Maricopa County, Respondent Employer,**

**Home Indemnity Company, Respondent Carrier.**

**No. 17595–PR.**

Supreme Court of Arizona, En Banc.

Jan. 3, 1985.

Reconsideration Denied March 5, 1985.

Gorey, Delaney & Melkonoff by Edgar M. Delaney, Phoenix, for petitioner.

Sandra Day, Chief Counsel, Indus. Com'n of Arizona, Moore & Long by James B. Long, Phoenix, for respondents.

FELDMAN, Justice.

Philip Gallegos (claimant) asks us to review a decision of the court of appeals, *Gallegos v. Industrial Commission*, 144 Ariz. 31, 695 P.2d 280 (1984), denying claimant rearrangement of his previous workman's compensation award. In reaching that conclusion the court held claimant

was bound by the *actual* facts in existence at the time of the previous award and could not rely on the facts established by the award if those facts were incorrect.

We granted review because we believe the administrative law judge and court of appeals erred in interpreting the statute, failed to apply the doctrine of res judicata correctly, and because the application of that doctrine in compensation cases is an issue of public importance. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and Rule 23(c)(4), Ariz.R.Civ.App. Proc., 17A A.R.S.

## FACTS

The facts are largely uncontested. Claimant injured his back on January 9, 1978, while working as a laborer for Maricopa County. His pay at the time was $4.15 per hour. In 1979, his physician determined that the condition had become stationary and released claimant for work. Pressing financial need compelled claimant to take a job as a mover for North American Van Lines at an hourly wage of approximately $8.00 per hour. After six weeks, however, he returned to his physician because of pain, and was told that moving furniture was not what the doctor had contemplated when he released claimant for work. He was advised to take more sedentary work, such as clerking or security guard employment. In June 1979, because of continued pain, claimant quit his job at North American.

On November 23, 1979, the Industrial Commission (the commission) issued its Findings and Award for Unscheduled Permanent Partial Disability. At the time, unknown to the commission, claimant had quit his job with North American Van Lines, moved to Colorado, and was working for the minimum wage as a pants presser in his brother's dry cleaning business in Denver. The commission found that claimant had sustained a 15% general physical functional disability. Basing its decision on the information that claimant was employed with North American, however, the commission awarded him no compensation on the ground that he had demonstrated his ability to return to different employment at a wage rate equal to or higher than his pre-injury earnings. Neither party protested the award, and it became final.

On August 18, 1982, claimant filed a petition for rearrangement pursuant to A.R.S. § 23–1044(F). The commission denied the petition, and the administrative law judge (ALJ) affirmed after a hearing held on April 23, 1983. Claimant sought review by special action in the court of appeals, which affirmed by memorandum decision. *Gallegos v. Industrial Commission, supra.*

A.R.S. § 23–1044(F) provides, in pertinent part:

F. For the purposes of subsection C of this section, the commission shall, ... when the physical condition of the injured employee becomes stationary, determine the amount which represents the reduced monthly earning capacity, and upon such determination make an award of compensation *which shall be subject to change in any of the following events:*

1. Upon a showing of a change in the physical condition of the workman subsequent to such findings and award arising out of the injury resulting in the reduction or increase of his earning capacity.

2. Upon a showing of a reduction in the earning capacity of the workman arising out of such injury where there is no change in his physical condition, *subsequent to the findings and award.* (emphasis added)

At the April 1983 hearing, the ALJ correctly found that since claimant's physical condition had not changed, subsection 1 was inapplicable. To prevail on the rearrangement petition, therefore, claimant would have to fit within subsection 2 and show a reduction in earning capacity causally related to his injury and resulting from some *external change* in circumstances occurring after the commission issued its final award.

At the 1983 hearing on the petition for rearrangement it was learned that at the time of the 1979 award claimant had not actually been capable of earning $8.00 per hour as a mover, but had instead been employed at minimum wages as a pants presser.[1] These were the "actual facts" as they existed in 1979 but were contrary to the findings of the commission as contained in the award of November 23, 1979, which erroneously found no reduction of capacity from the $4.15 pre-injury level. The court of appeals correctly stated that under § 23–1044(F)(2), claimant was required to show a reduction in his earning capacity *subsequent* to the findings and award of November 1979. It concluded, however, that the evidence presented at the rearrangement hearing showed no difference between the earning capacity of claimant at the time of that hearing and his *actual* earning capacity at the time of the 1979 award. At 283. Therefore, the court held, claimant had failed to "satisfy the statutory requirements for rearrangement." *Id.* at 283.

In his petition for review to this court, claimant contends that the facts determined by the 1979 award were that he had the "earning capacity equal to or more than his date of injury wage and hence was not entitled to permanent partial benefits." Petition for Review at 3–4. He agrees that the 1979 determination is res judicata, but argues that what he was actually earning at the time of the award is immaterial. For the purposes of the rearrangement statute, claimant urges, the doctrine of res judicata applies to the facts as found in the previous award whether or not those facts were correctly found. If this theory is applied, claimant was earning a mover's wages in November 1979, therefore was capable of earning his pre-injury wage, and now is capable of earning no more than the minimum wage. Thus, claimant argues, he has shown a change or reduction in earning capacity in accordance with the requirements of § 23–1044(F)(2).

Respondents reply that the former award was res judicata as to the "facts and circumstances existing prior to the alleged change that is the basis for ... rearrangement." Response to Petition for Review at 8. They contend that in reality claimant was capable of earning only the minimum wage at the time of the award; since he is now capable of earning the same, they

---

1. The 1979 award did not specify a particular employment. It did contain findings that the claimant had "sustained a 15% general physical functional disability" (Finding # 3), that in determining monthly earning capacity and its reduction the commission had given "full consideration to all ... facts and circumstances pertaining to this case" (Finding # 4) and that claimant "has demonstrated his ability to return to different employment, ... at a rate equal to or in excess of his former employment, thereby sustaining no loss of earning capacity." (Finding # 5). At that time the information in the file of the commission indicated, by memorandum dated one week prior to the award that:

> Applicant is working for Valley North American Van Lines. Wages for this type of work at doi [date of injury] paid from $8.68 to $10.63 per hour, which would indicate no loss in earning capacity.
> Applicant has demonstrated his ability to return to different employment, but based on date of injury wage scale, at a rate equal to or in excess of his former employment, thereby sustaining no loss of earning capacity.

Memorandum "To The File" dated November 16, 1979.

> There is nothing else in the record of the 1979 hearing which would support or explain the finding of no reduction in earning capacity. Both respondent and the court of appeals agree that " '[f]indings of the commission are sufficient if they can be made certain by reference to the record." At 283 (quoting *Muehlebach v. Dorris-Heyman Furniture Co.*, 43 Ariz. 526, 531, 33 P.2d 339, 341 (1934)). Thus, we agree with the court of appeals that the ALJ may "properly look outside the award to determine the basis of the prior award." At 284. Of course, "looking outside" means looking to the record of the 1979 hearing to explain the words contained in the 1979 award. It does not extend to looking at new evidence presented at some subsequent time in order to define what should have been meant in the 1979 award. Here, the only evidence before the commission at the time of the 1979 award was that claimant had been working as a mover earning over $8.00 an hour and had therefore sustained no loss of earning capacity. The true facts which existed at the time of the award were unknown to the carrier or the commission. The award was made on the written record of the commission. There was no protest, no hearing and no contest.

urge that the facts have not changed, and that there exists no basis for rearrangement.

## THE REARRANGEMENT STATUTE

■ Before 1964, A.R.S. § 23–1044(F) allowed a rearrangement only in the event of a post-award change in the claimant's physical condition. In *Adkins v. Industrial Commission*, 95 Ariz. 239, 389 P.2d 118 (1964), faced with a situation where the petitioner accepted the commission's award and attempted to continue with his usual employment but found that he was too disabled to continue regular work, this court held the statute unconstitutional because it limited rearrangements to situations in which the loss of earning capacity was attributable to increase in physical disability after the final award. The legislature took heed and added subsection 2, permitting rearrangement also when the loss of earning capacity was the proximate result of non-physical changes related to the industrial accident. The present situation, where claimant was earning higher wages at one time but cannot now do so because his injury makes such work medically inadvisable, is the very circumstance that is designed to be encompassed by the statute. *Adkins v. Industrial Commission, supra.* To meet his burden, the worker who petitions for rearrangement need "only show that his inability to secure or retain work is at least partially injury related." *Laker v. Industrial Commission*, 139 Ariz. 459, 462, 679 P.2d 105, 108 (App.1984). *See also Bryant v. Industrial Commission*, 21 Ariz.App. 356, 357, 519 P.2d 209, 210 (1974). The burden then shifts to the carrier to show lack of causation. *Laker v. Industrial Commission, supra.* "To require any more than [such] a prima facie showing of the relationship between the decreased earning capacity and the pre-existing injury" would be contrary to "clear legislative intent as set forth in [§ 23–1044(F)(2) ]." *Hunt v. Industrial Commission*, 107 Ariz. 569, 571, 490 P.2d 575, 577 (1971).

■ We agree that under the guise of a rearrangement petition claimant may not relitigate issues already decided at the time of the first award. *Arizona Sand and Rock v. Industrial Commission*, 123 Ariz. 448, 600 P.2d 752 (App.1979). As long as the prior award is final, whatever was decided is final and so is every fact necessary to that decision. Both parties here are bound, therefore, by the finding that claimant had suffered no permanent loss of earning capacity as of November 23, 1979. Implicit in that finding is the only fact then before the commission on which the finding could be based. That fact was that claimant's pre-injury earning capacity ($4.15 per hour) had not been reduced because he was capable of doing, and actually was doing, other work which paid over $8.00 per hour. Although that determination was wrong, it became final. We agree with respondents that the issues determined at the first award are res judicata. Right or wrong, the facts determined by the final order are binding. As the court of appeals noted, the 1979 award is final " 'not because of its correctness, but despite its incorrectness'." Slip op. at 5 (quoting *County of Maricopa v. Industrial Commission*, 134 Ariz. 159, 163, 654 P.2d 307, 311 (App.1982)). Notwithstanding the actual state of affairs at the time of the award, the commission found that claimant had suffered no loss of earning power. This finding is part of the award and was based on an incorrect determination that claimant could earn and was earning over $8.00 per hour as a mover. This final determination, even though incorrect, is the starting point from which subsequent changes must be measured; evidence of wages actually earned by claimant during the months between the injury and the 1979 date of award is simply not relevant once that award became final. *Severy v. S.D. Warren Co.*, 402 A.2d 53, 55–56 (Me.1979).

■ Thus, we have no disagreement with that part of the holding of the court of appeals which states:

Therefore, claimant is bound by the finding that his earning capacity, at the time

of the November 1979 award, was as much as or more than his average monthly wage at the time of his industrial injury.

At 283. The doctrine of res judicata bars claimant from seeking to recover benefits from the date of the 1979 award to the date of the rearrangement petition on the theory that the "actual facts" establish that his loss of earning capacity in reality predated the first award.[2] The next sentences in the court of appeals' opinion, however, give us pause:

> Since the evidence presented to the ALJ established no change in claimant's *actual* (emphasis added) earning capacity *subsequent* to the [1979] findings and award, claimant fails to satisfy the statutory requirements for rearrangement. This is true despite the fact that the findings and award of November 1979 were factually incorrect ...

We fail to see how the court could have concluded that the evidence showed no change. If claimant was bound by the evidence and issues determined in the first award, then so are the respondents. *Atkinson Co. v. Kinsey*, 61 Ariz. 127, 130, 144 P.2d 547, 548 (1944). For the purposes of the rearrangement petition, therefore, the 1979 award established that claimant was capable of earning $8.00 or more per hour in November 1979 and had suffered no loss of earning capacity. Uncontroverted evidence offered in the rearrangement hearing established that, in April 1983, claimant was capable of earning no more than the minimum wage. Giving res judicata principles their proper effect, we cannot but conclude that claimant did demonstrate a reduction in earning capacity from his pre-injury earnings of $4.15 per hour subsequent to the date of the first award. The respondents, equally bound by the determination that claimant was earning $8.00 or more per hour in November 1979, were released from the duty of paying any compensation between 1979 and 1982, and cannot now be heard to complain because the first award was wrong. *See D & T Brooks, Inc. v. Workman's Comp. A. Bd.*, 38 Pa.Cmwth. 223, 392 A.2d 895, 898 (1978).

 We hold, therefore, that subsection 2 of the rearrangement statute [A.R.S. § 23–1044(F) ] is applicable to all situations where, subsequent to the final award, there has been a reduction in earning capacity causally related to the previous injury. Where the first award has become final, the question of change is to be measured by comparing the facts determined by the final findings and award with those existing at the time of the rearrangement peti-

**2.** There appears to be a split of authority about whether the modification of an award can be made retroactive to the date of the change in condition rather than to the date of filing of the modification petition. See 3 A. Larson, The Law of Workmen's Compensation, § 81.52(d)(1983) and cases cited therein. Arizona courts have held that modifications made pursuant to petitions for reopening date from the time of filing of the petitions. *Meeks v. Industrial Commission*, 17 Ariz.App. 294, 295–96, 497 P.2d 410, 411–12, (1972); *Continental Casualty Co. v. Industrial Commission*, 104 Ariz. 499, 503, 455 P.2d 977, 981 (1969); *Jupin v. Industrial Commission*, 71 Ariz. 131, 133, 224 P.2d 199, 200 (1950). There are, however, no cases or statutes explicitly stating that the same is true of petitions for rearrangement under A.R.S. § 23–1044(F)(2). While some jurisdictions have held that the effective date for modification of an award is the date on which the change is shown to have occurred rather than the date of presentation of the modification petition, see, e.g., *Barnes and Tucker Co. v. Workmen's Comp. App.*

*Bd.*, 39 Pa.Cmwlth. 123, 394 A.2d 1052 (1978), we think that the better reasoned view is one that makes the change effective from the day the petition was filed. In the instant situation, only claimant really knew when his earning capacity decreased, and it was up to him to file a rearrangement petition as soon after that as he could. It would be unfair to burden the employer with the responsibility of making retroactive payments in situations where claimant may have lacked diligence in filing for rearrangement. More importantly, rearrangement is an exception to the rule of finality. The exception may well be necessary considering the limited role of res judicata in workers' compensation cases. *Bill Breck Dodge v. Industrial Commission*, 138 Ariz. 388, 392, 675 P.2d 275, 279 (1983) (Feldman, J., concurring). However, to make claimant's rearrangement petition retroactive to the date of the change in earning capacity would result in an almost complete destruction of the principle of finality. We are not disposed to go so far.

tion, even if the earlier findings have been made incorrectly. The ALJ and the court of appeals erred in failing to give finality to the 1979 findings. The award is set aside and the opinion of the court of appeals is vacated. The case is remanded.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and CAMERON, JJ., concur.