746 P.2d 25

**EPSTEIN'S CUSTOM CARPENTRY, Petitioner Employer,**

**Mission Insurance Company, Petitioner Carrier,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Albert Epstein, Respondent Employee,**

**Steve Demenge, Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

No. 1 CA–IC 3653.

Court of Appeals of Arizona, Division 1, Department B.

Oct. 29, 1987.

Reconsideration Denied Dec. 14, 1987.

John F. Day, Phoenix, for petitioner employer and carrier.

Dennis P. Kavanaugh, Chief Counsel, Phoenix, for respondent.

Rabinovitz & Associates by Gary M. Israel, Bernard I. Rabinovitz, Tucson, for respondent employee.

Robert K. Park, Chief Counsel, State Compensation Fund by Fred R. Sands, Tucson, for respondent employer and carrier.

## OPINION

JACOBSON, Judge.

This is a review of an Industrial Commission award allowing a claimant who failed to contest a finding of no permanent disability to reopen his claim notwithstanding the fact that there was no change in his physical condition. The issue before this court is whether this result is required under the decision of *Gallegos v. Industrial Commission*, 144 Ariz. 1, 695 P.2d 250 (1985).

In 1965, the claimant, Albert Epstein, fractured his right leg and ankle when he fell from a roof to a concrete floor. The State Compensation Fund (Fund) accepted this claim and he was subsequently discharged with a 25% impairment of the right lower extremity.

After returning to work, the claimant suffered several other industrial injuries to his right ankle, claims for which were accepted, and closed without additional permanent impairment.

On August 27, 1983, the claimant again injured his right ankle. At this time his employer's compensation carrier was Mission Insurance Company (Mission). Treating orthopedic surgeon Jon B. Wang, M.D., diagnosed torn medial and lateral right ankle ligaments. He took the claimant off work, and prescribed an ankle brace. Two weeks later, Dr. Wang noted that the claimant was fully weight-bearing in his ankle brace. Dr. Wang rechecked the claimant on October 17, 1983, at which time the claimant reported that he was getting along well at work and had nearly returned to his pre–1983 injury level. Dr. Wang noted that the industrial injury was "improving," and he recommended that the claimant continue to work, but he did not discharge him. The claimant failed to return for further treatment or evaluation.

On November 11, 1983, Mission issued a notice closing the claim effective October 17, 1983 without permanent impairment. The claimant did not protest the termination notice, which accordingly became final. *See* A.R.S. § 23–947.

The claimant continued working approximately a year, until November 1984. In February 1985, he petitioned to reopen the 1965 and 1983 claims. The two petitions were consolidated for hearing and disposition.[1]

In May 1985, Dr. Wang reexamined the claimant at Mission's request. Dr. Wang's physical findings closely paralleled the October 17, 1983 findings. X-rays also demonstrated no change. For the first time, however, Dr. Wang concluded, based upon the passage of time, that the 1983 industrial injury was "stable, and on the basis of that injury alone he [the claimant] would have an 11 percent permanent impairment to the right lower extremity."

At the scheduled hearing, the claimant testified that he had some residual ankle stiffness and soreness after the 1967 medical release, which prevented him from climbing. The soreness progressively worsened over the years and with each additional ankle injury. Concerning the 1983 injury, the claimant denied that Dr. Wang mentioned a follow-up evaluation. He also testified that he attempted to work despite worsening foot and ankle pain, leg instability, and severe low back pain. He ultimately quit working because he could no longer stand on his leg. On cross-examination, he explained that he had not protested the November 1983 termination notice because he thought his current symptoms would resolve.

Dr. Wang confirmed that in October 1983 he had advised the claimant to return if he had continuing problems. He testified, however, that he did not then indicate that the industrial injury was stationary or express an opinion about impairment because it was too soon to evaluate whether the result of the injury was permanent. He also confirmed that the claimant's physical condition had not changed between October 1983 and May 1985. His opinion that the industrial injury had resulted in a permanent impairment was based on the persistence of symptoms. He explained that the 1983 injury involved damaged ankle ligaments, whereas the 1965 injury involved fractured ankle bones. On cross-examination, Dr. Wang conceded that he had not reviewed the 1967 discharge report and that the claimant's ankle probably was abnormal because of his prior injuries. Despite the absence of comparative evidence, Dr. Wang reiterated on re-direct his opinion that the August 1983 injury rated an additional 11% permanent impairment.

A medical report which was the result of a group consultation consisting of Drs. John P. Utz, Lloyd S. Anderson and Bertram G. Kwasman, was admitted into evidence. This report concluded:

> The group consultants feel that the problems that Mr. Epstein is now complaining of, mainly his right ankle, is [sic] related to the injury of 10–15–65 and not injuries of 1969, 1980, or 1983, which we feel were temporary aggravations of a preexisting condition.

However, both Doctors Utz and Kwasman when called to testify said they would either defer to or agree with Dr. Wang's opinion that the claimant suffered an additional 11% impairment to the right ankle as the result of the 1983 injury. Both doctors agreed that the physical condition of claimant's right ankle in 1983 when his claim was closed was the same as in 1985 when they examined him.

The Administrative Law Judge then issued the award reopening the August 1983 injury claim. He accepted Drs. Wang and Kwasman's opinion that this injury had caused an additional 11% permanent right lower extremity impairment. Based on this, he concluded that:

> [t]he applicant has established that he has an additional permanent condition beyond the 'no permanent disability' de-

1. The Fund denied the initial petition to reopen the 1965 claim, and the claimant protested late. The untimely hearing request was subsequently dismissed. This dismissal is the subject of another special action. The claimant then filed a second petition to reopen the 1965 claim on January 27, 1986. This petition is the one that was consolidated with the petition to reopen the 1983 claim. By an opinion in *Epstein v. Industrial Commission*, 154 Ariz. 189, 741 P.2d 322 (App.1987), the dismissals were set aside. *Also see Epstein v. Industrial Commission*, 1 CA–IC No. 3655, memorandum decision, filed May 5, 1987.

scribed on the face of the November 11, 1983 closure Notice. See *Gallegos v. Industrial Commission,* 144 Ariz. 1, 695 P.2d 250 (1985), cited as applying to re-openings in *Church of Jesus Christ of Latter Day Saints vs. Industrial Commission,* [150] Ariz. [495] (App.), [724] P.2d [581] (1 CA–IC 3334, 2/20/86), at footnote 2. His Petition to Reopen that August 27, 1983 date of injury claim must be, and hereby is, granted.

After affirmance on administrative review, this special action followed.

■ On review, Mission asserts that pre-clusion applies to this case. It argues that the Administrative Law Judge misapplied *Gallegos* because the claimant's physical condition was unchanged and the claimant could have challenged the termination notice based on the same evidence he present-ed to support reopening. In any event, it is argued that the evidence supporting re-opening is speculative.

Before beginning an analysis of *Galle-gos,* we dispose of Mission's contention that it is inapplicable because *Gallegos* involved a rearrangement under A.R.S. § 23–1044(F) while this case involves a re-opening under A.R.S. § 23–1061(H). This difference does not distinguish *Gallegos* in principle. Both rearrangement and reopen-ing are statutory exceptions to finality. *See Calixto v. Industrial Commission,* 126 Ariz. 400, 616 P.2d 75 (App.1980). Moreover, *Gallegos* was concerned with the *res judicata* effect of the awards of the commission, which is the exact principle Mission wishes to apply here. We there-fore conclude that *Gallegos* is as applicable to reopenings as it is to rearrangements. *See Church of Jesus Christ of Latter Day Saints v. Industrial Commission,* 150 Ariz. 495, 724 P.2d 581 (App.1986).

We turn then to an analysis of *Gallegos.* In *Gallegos,* the claimant, following his in-jury, worked at a job which paid $8.00 an hour, which was in excess of his pre-injury earnings. However, at the time the Com-mission determined his loss of earning ca-pacity, he was earning only the minimum wage, a fact not conveyed to the Commis-sion. Therefore, the Commission's order

reflected the prior working experience, that is, that he had no loss of earning capacity. This order was allowed to become final. Several years later, Gallegos filed a peti-tion for rearrangement, contending he was only earning a minimum wage. The Su-preme Court disagreed with the Court of Appeals' analysis that in determining whether a reduction in earning capacity had occurred between the date of the award and the date of the petition for rearrangement, a comparison of the facts as they actually existed on both dates must be undertaken. Rather, the Supreme Court took the position that regardless of what the claimant's earning capacity was at the time of the award, the principles of *res judicata* established the controlling "facts" at that time as those which were set out in the award. Thus the Supreme Court concluded:

> We fail to see how the court [of Ap-peals] could have concluded that the evi-dence showed no change. If claimant was bound by the evidence and issues determined in the first award, then so are the respondents. [citations omitted]. For the purposes of the rearrangement petition, therefore, the 1979 award estab-lished that the claimant was capable of earning $8.00 or more per hour in No-vember, 1979, and had suffered no loss of earning capacity. Uncontroverted evi-dence offered in the rearrangement hear-ing established that, in April, 1983, claim-ant was earning no more than the mini-mum wage.

144 Ariz. at 5, 695 P.2d at 254.

The result in *Gallegos* is clearly applica-ble here. We merely need to compare the previous notice of claim status finding no permanent disability with Dr. Wang's opin-ion that the claimant now has an 11% per-manent disability to establish the "change" allowing reopening.

However, since cases governed by *Galle-gos* are frequently the subject of inquiry in the Workers' Compensation field and be-cause the result reached in *Gallegos* ap-pears to be contrary to the Supreme Court's decision in *Stainless Specialty Mfg. Co. v. Industrial Commission,* 144

Ariz. 12, 695 P.2d 261 (1985) entered after *Gallegos*, further inquiry appears appropriate. In *Stainless Specialty*, the court in its discussion of current law acknowledged that:

> In the workers' compensation setting, the doctrine of *res judicata* operates to bar relitigation of those issues which were determined in the previous proceedings *as well as those which could have been decided at the time of the original award.*

144 Ariz. at 15, 695 P.2d at 264 (emphasis added).

Moreover, the court conceded that *res judicata* serves to preclude all questions *existing and known* at the time of the award.

The principle underlying reopening is that something factually happens between the date of the original award and the time when reopening becomes appropriate. As *Stainless Specialties* points out:

> But it is common knowledge that the results of physical injuries are often not determinable at the time they are received, and to require that they be then stated is to demand the performance of the impossible.

144 Ariz. at 16, 695 P.2d at 265, *quoting Zagar v. Industrial Commission*, 40 Ariz. 479, 486–87, 14 P.2d 472, 474 (1932).

■ Thus, it is the relief valve contained in the reopening procedure which provides for contingencies which are incapable of being determined for all time. There is a difference, however, between making allowances for future changes measured against "facts" which have been or could have been determined and precluding an inquiry into what those "facts" were so that future developments can be measured. This is particularly true when the "facts" are really opinions of an expert witness which the original fact finder accepted as true. Thus, it can be argued that it is not the "fact" found by the award which gives rise to principles of preclusion, but rather a determination of what facts were litigated or could have been litigated so that these same facts will not again be the subject of judicial inquiry. Were it otherwise, judicial inquiry would be endless. *Gallegos* appears to be to the contrary.

If there is anything subject to further inquiry in *Gallegos* it is the observation that it seems to run counter to the proposition embodied in A.R.S. § 23–947(B) [2], that if a party is aggrieved by a decision, that decision should be timely subjected to administrative scrutiny, or the party must thereafter live with its consequences. In any event, as we have already observed, we believe that *Gallegos* compels us to affirm the award.

Because of this resolution, we do not reach the issue of whether the Fund's reliance on *Payne v. Industrial Commission*, 136 Ariz. 105, 664 P.2d 649 (1983), as alternative authority supports the award.

■ Mission finally argues that the medical evidence that the Administrative Law Judge accepted failed to support reopening. We agree that the cross-examination of Dr. Wang undercut his opinion that the August 1983 injury caused a specific loss of range of motion. But Dr. Wang also made it clear that this was not the primary basis for his rating of an impairment:

> With regard to the loss of range of motion you are correct, because I did not know what the range of motion was when he was considered stable after the 1965 injury, but I did feel that the injury of 1983 was not one to the ankle joint, that is the bone structures, but more to the soft tissue structures about the ankle, and therefore I felt there was some permanent impairment on the basis of the injury to structures about the ankle as opposed to the structures within the ankle itself. . . .
>
> [H]e was specifically symptomatic and had objective findings over three ligaments after the acute injury of 1983, and he still had some findings at those same

---

2. A.R.S. § 23–947(B) provides:

*Failure to file* [a request for hearing] with the commission within the required ninety days by a party means that the determination by . . . the insurance carrier . . . is final and res judicata to all parties.

ligaments when I reexamined him in 1985; therefore, I felt that there was some permanent impairment based on the 1983 injury.

This opinion satisfies the standard for rating an impairment under *W.A. Krueger v. Industrial Commission*, 150 Ariz. 66, 722 P.2d 234 (1986).

For the foregoing reasons, we affirm the award.

KLEINSCHMIDT, P.J., and EUBANK, J., concur.