880 P.2d 642

**CIRCLE K CORPORATION,**
**Petitioner Employer,**

**GAB Business Services,**
**Petitioner Carrier,**

v.

**The INDUSTRIAL COMMISSION**
**OF ARIZONA, Respondent,**

**La Donna Sharp, Respondent Employee.**

**No. 1 CA–IC 92–0159.**

Court of Appeals of Arizona,
Division 1, Department D.

Dec. 9, 1993.

Review Denied Sept. 20, 1994.

Jones, Skelton & Hochuli by Calvin Harris, Phoenix, for petitioners.

Anita R. Valainis, Chief Counsel, Industrial Com'n of Arizona, Phoenix, for respondent.

Ronald M. Meitz, Phoenix, for respondent employee.

## OPINION

FOREMAN, Judge.*

Circle K Corporation ("Circle K") filed this special action to challenge the award of the Arizona Industrial Commission reopening a 1987 industrial injury claim brought by La Donna Sharp ("Sharp"), its employee. Circle K has argued that reopening the claim is precluded because Sharp allowed the denial of a prior petition to reopen to become final. We conclude that neither claim preclusion nor issue preclusion prevents the reopening of this claim and, therefore, affirm the award and decision of the Administrative Law Judge ("ALJ").

### I. Factual and Procedural History

Sharp worked as a clerk and cashier for Circle K. She was privately insured through CIGNA health insurance. She first complained to her primary care physician, Barbara Porter, M.D., in April 1987, of right hip and leg pain. The pain was exacerbated by standing and walking at work. Dr. Porter diagnosed probable intermittent sciatica.

On July 2, 1987, Sharp fell from a ladder at work. Six days later she saw Dr. Porter, who diagnosed mild trapezius spasm secondary to the injury and sciatica. Sharp and Dr. Porter then completed a Worker's and Physician's Report.

Circle K, through its claims representative GAB Business Services ("GAB"), issued a notice of claim status, which accepted a no time lost claim and simultaneously closed the claim without permanent impairment, effective July 8, 1987. Sharp, who was unrepresented by counsel, apparently wrote GAB.[1] The Industrial Commission treated this letter as a protest of the termination notice and scheduled a hearing, but Sharp later withdrew her protest. On October 27, 1987, the ALJ entered an award dismissing the hearing request. The termination notice accordingly became final. *See* Ariz.Rev.Stat.Ann. ("A.R.S.") § 23–947 (Supp.1992).

Meanwhile, Sharp continued to see CIGNA physicians for her lower back, hip, and leg symptoms. Finally a CT scan revealed stenosis and a disc bulge at L4–5.

On June 1, 1988, Paul Williams, M.D., performed the first of two lower back surgeries on Sharp. He found a herniated disc at L4–5 and removed it piecemeal. The following week Dr. Williams reported that Sharp no longer had right leg pain and possibly could return to work within three weeks.

Nine days after her surgery, Sharp, who remained unrepresented, filed her first Petition to Reopen.[2] On June 28, 1988, Dr. Williams reported that Sharp's symptoms had recurred over the past two weeks, and he recommended a repeat CT scan. That scan revealed stenosis and a diffusely bulging disc at L4–5.[3] On July 27, 1988, GAB denied the Petition to Reopen without specifying the reason for the denial.

Dr. Williams again performed lower back surgery on September 9, 1988, which confirmed stenosis and a bulging disc at L4–5. GAB's termination notice became final on October 25, 1988, without protest from Sharp. A.R.S. § 23–947. Two days later Dr. Williams released Sharp back to work and reported that, although she had localized lower back and hip pain, she no longer had right leg pain.

Sharp returned to work and did not complain of symptoms again to her doctor for about two years. When the symptoms persisted she filed, again without the assistance of counsel, a second Petition to Reopen on June 21, 1991. GAB denied the petition. On September 4, 1991, Sharp, now represented by her current counsel, filed a hearing request to protest the denial.

At the ensuing hearings, testimony was given by Sharp, Dr. Porter, Sanford Fineman, M.D., Sharp's new neurologist, and Ronald M. Lampert, M.D., an orthopedic sur-

---

* The Honorable John Foreman, Maricopa County Superior Court Judge, was authorized to participate in the disposition of this matter by the Chief Justice of the Arizona Supreme Court pursuant to article 6, section 3 of the Arizona Constitution.

1. This letter is not part of the certified record.

2. The petition and documentation filed in support of it are not part of the certified record.

3. How the L4–5 disc removed in the first surgery could be found to be bulging in the second surgery is not explained in the record or findings of the ALJ.

geon who independently examined Sharp for Circle K. Dr. Williams, who no longer resided in Arizona, did not testify.

Sharp testified that she continued to work after the July 1987 industrial injury until the first surgery in June 1988. She felt cured after the second surgery in September 1988, but, after returning to work, her symptoms gradually recurred. In her estimation, her symptoms in June 1991, when she filed her second Petition to Reopen, were much worse than her symptoms in October 1988, when she returned to work after the second surgery. Most, but not all, of her out-of-pocket expenses for the back surgeries and other treatment in 1988 were covered by CIGNA.

After the hearing, the ALJ accepted Dr. Fineman's opinion that Sharp's industrial injury was causally connected to her worsened current condition. He issued an award reopening the 1987 claim. He also found that Sharp was precluded from receiving benefits for the 1988 surgeries but not for her new or additional disability. The award was summarily affirmed on administrative review and Circle K brought this special action.

## II. Legal Analysis

Circle K has argued that the "issue" of causation was "necessarily decided" against Sharp when the denial of the first Petition to Reopen was not contested and became final. Circle K contends that Sharp is unable to prove the "issue" of causation in the second Petition to Reopen because of res judicata and issue preclusion or claim preclusion.[4]

Res judicata and collateral estoppel are traditional legal terms describing the effect of a prior decided case upon a later pending case. Allan D. Vestal, *Res Judicata/Preclusion* 6–7 (1969).

The terms "claim preclusion" and "issue preclusion" were popularized by the late Pro-

fessor Allan Vestal of the University of Iowa College of Law. Ruth Bader Ginsburg, *The Work of Professor Allan Delker Vestal*, 70 Iowa L.Rev. 13, 15–16 (1984). Professor Vestal advocated the use of the descriptive terms "claim preclusion" and "issue preclusion" instead of the archaic phrases "res judicata" and "collateral estoppel." Vestal at 6–7. Professor Vestal hoped that the descriptive terms would make the doctrines of res judicata and collateral estoppel more understandable. *See* Ginsburg at 16. The confusion over which doctrine applies in this case demonstrates the wisdom of Professor Vestal's simplified nomenclature.

### A. Defining Preclusion/Res Judicata

"Claim preclusion" occurs when a party has brought an action and a final, valid judgment is entered after adjudication or default. The party is foreclosed from further litigation on the claim only when the policies justifying preclusion are furthered.[5] *See* Vestal at 43. "Issue preclusion" occurs when the issue to be litigated was actually litigated in a prior proceeding. In the prior litigation a final judgment was entered, the party against whom the doctrine is to be invoked had a full opportunity to litigate the issue, the party actually did litigate the issue, and the issue was essential to a final judgment. *Chaney Bldg. Co. v. City of Tucson*, 148 Ariz. 571, 573, 716 P.2d 28, 30 (1986). In a second proceeding a party should not be able to relitigate the issue that has already been decided. However, in the case of a judgment entered by default, issue preclusion is not applied, because none of the issues is litigated. *Id.* Issue preclusion requires actual litigation. Claim preclusion does not.[6]

The clear line between the descriptive terms became murky because of an ambiguous use of claim preclusion.[7] The problem

---

4. The Opening Brief uses "the doctrines of issue preclusion and res judicata" in the Issue Presented For Review heading and "the doctrines of res judicata and claim preclusion" in the Argument heading.

5. For a discussion of the policies supporting the application of preclusion, see section IIB, below.

6. Compare the definitions of res judicata and collateral estoppel in *Matusik v. Arizona Public*

*Service Co.*, 141 Ariz. 1, 3, 684 P.2d 882, 884 (App.1984).

7. *See for example, Perry v. Industrial Comm'n*, 154 Ariz. 226, 228 n. 1, 741 P.2d 693, 695 n. 1 (App.1987).

began when res judicata was applied to two different types of cases. Res judicata was used to mean an adjudication that bars any further litigation on a claim. This is classic claim preclusion. However, res judicata also was used to refer to the resolution of an issue, a facet of a claim, which bars further litigation of that issue.[8] This use is similar to issue preclusion without the requirement of litigation.

Both uses of res judicata have crept into claim preclusion cases because res judicata is often equated with claim preclusion.[9] Vestal at 118. This blurred the distinction between issue and claim preclusion when, as here, preclusion is sought on an issue essential to a prior claim which was resolved by default, not litigation.

Circle K's difficulty in articulating exactly what form of preclusion it is seeking is understandable because the cases have used issue preclusion, claim preclusion, and res judicata to describe the preclusive relief sought by Circle K.[10]

## B. Applying Preclusion in General

Professor Vestal identified a number of purposes served by issue and claim preclusion to help courts decide whether to apply either concept. Preclusion in either form promotes: (1) finality in litigation; (2) the prevention of harassment; (3) efficiency in the use of the courts; and (4) enhancement of the prestige of the courts. Vestal at 7–12. However, he cautioned against the rigid application of preclusion. He approved the use of preclusion "so long as litigants are given their day in court and the rights of individuals are not infringed." See id. at 16.

Because of these policies, courts hesitate to apply preclusion when, for example, the party against whom preclusion is sought had no incentive to litigate. See Red Bluff Mines, Inc. v. Industrial Comm'n, 144 Ariz. 199, 205, 696 P.2d 1348, 1354 (App.1984). In Red Bluff the first litigation involved a total liability of one thousand dollars. That potential liability was considered to be so small in relation to a potential exposure of twenty-four thousand dollars in the second litigation that the imposition of preclusion in the second case was found to be plainly unfair. Id. at 205, 696 P.2d at 1354.[11]

## C. Applying Preclusion in a Workers' Compensation Case

█ In addition to the policies that must be considered in determining whether to apply a form of preclusion in general, there are specific limitations upon the application of preclusion in workers' compensation cases. The basic purposes of the workers' compensation laws are: (1) "to assure and make certain a just and humane compensation law" for Arizona workers; and (2) to protect them from "the burdensome, expensive and litigious remedies for injuries" that would otherwise govern their efforts to obtain compensation. Ariz. Const., art. 18, § 8, cited in Bill Breck Dodge, Inc. v. Industrial Comm'n, 138 Ariz. 388, 392, 675 P.2d 275, 279 (1983) (Feldman, J., specially concurring). The application of preclusion in workers' compensation cases requires the balancing of the remedial purpose of the law against the purposes furthered by preclusion which assists the effective administration of the compensation system and helps insurers accurately estimate reserve requirements. Stainless

---

8. See for example, Matusik, 141 Ariz. at 3, 684 P.2d at 884.

9. See for example, Perry, 154 Ariz. at 228 n. 1, 741 P.2d at 695 n. 1.

10. See Perry, 154 Ariz. at 227–28, 231, 741 P.2d at 694–95, 698. In Perry the claimant litigated causation in the original claim in the prior litigation of the claimant's case. Both claim preclusion and issue preclusion apparently applied to preclude reopening the claim. See also Epstein's Custom Carpentry v. Industrial Comm'n, 155 Ariz. 284, 287–88, 746 P.2d 25, 28–29 (App.1987)

(no prior litigation and no application of res judicata); Cigna Health Plan v. Industrial Comm'n, 168 Ariz. 118, 122–23, 811 P.2d 370, 374–75 (App.1991) (no prior litigation and no application of claim preclusion or issue preclusion).

11. See also Ferris v. Hawkins, 135 Ariz. 329, 660 P.2d 1256 (App.1983). The rigid application of res judicata and collateral estoppel must give way where the result would frustrate a legislative purpose of compensation for lost wages. See id.

*Specialty Mfg. Co. v. Industrial Comm'n,* 144 Ariz. 12, 17, 695 P.2d 261, 266 (1985).

In striking this balance the legislature has provided, with certain exceptions, that when a timely request for a hearing of a claim is not made, the employer, insurer and the Industrial Commission may rely on their determination of the claim as "final and res judicata to all parties." A.R.S. § 23–947(B). However, the legislature also created statutory exceptions to preclusion in A.R.S. §§ 23–1044(F) and 23–1061(H). *Epstein's Custom Carpentry,* 155 Ariz. at 287, 746 P.2d at 28. Arizona Revised Statutes section 23–1061(H), which was applied in this case, allows claimants to reopen a previously closed case upon a showing of a "new, additional or previously undiscovered temporary or permanent condition." The case law of this state has been enriched by a number of cases dealing with the circumstances under which a change in condition gives rise to jurisdiction to reopen a claim. *See generally* Ray K. Harris, Note, *Res Judicata and Reopening Workers' Compensation Claims in Arizona,* 23 Ariz.L.Rev. 1103, 1111–1129 (1981); Thomas M. Gordon and Melinda K. Poppe, *Reopening, Rearrangement, and Settlement, in Arizona Workers' Compensation Handbook,* Ch. 11 (Ray Jay Davis *et al.* eds., 1992).

### D.   Claim Preclusion Does Not Apply

■ The doctrine of claim preclusion does not apply in this case for two reasons. First, the ALJ found the exception to claim preclusion set forth in A.R.S. § 23–1061(H). His fact/law conclusion that a new, additional or previously undiscovered condition existed justifying Sharp's petition to reopen has not been directly challenged. The record contains substantial evidence to support the ALJ's conclusion.

Second, in this case Sharp had little financial incentive to litigate the issue of causation at the time her first claim to reopen became final. She had undergone two surgeries. The second apparently was successful in relieving her symptoms. The medical costs were for the most part covered by other insurance. *See Red Bluff Mines,* 144 Ariz. at 205, 696 P.2d at 1354.

### E.   Issue Preclusion Does Not Apply

■ Issue preclusion does not apply in this case because the issue of causation has never been litigated. This case is similar in all important respects to *Cigna Health Plan v. Industrial Comm'n,* 168 Ariz. 118, 811 P.2d 370 (App.1991). In *Cigna* the claimant and the carrier settled the claim prior to a hearing. The settlement agreement contained a provision in which the claimant acknowledged that the claim "will become final and res judicata as to those issues that could have been litigated at this time." *Id.* at 120, 811 P.2d at 372. Causation was disputed by the parties. The claimant received a sum of money for entering into the agreement. Nearly a year later the claimant began having new difficulties which led to a petition to reopen. As in this case, the ALJ found a new, additional or previously undiscovered condition and found a causal relationship to the claimant's original injury. 168 Ariz. at 121, 811 P.2d at 373. The carrier argued that the settlement precluded reopening the claim.

The court in *Cigna* distinguished *Perry v. Industrial Comm'n,* 154 Ariz. 226, 741 P.2d 693 (App.1987), the case relied upon here by Circle K and the carrier in *Cigna.* In *Perry* the issue of causation actually was litigated at a prior hearing. The *Cigna* court pointed out that in *Cigna* the issue of causation had not been litigated and the agreement between the parties did not cover causation; therefore, the agreement did not preclude reopening the claim. The *Cigna* court expressly found that the elements of issue preclusion were not satisfied. 168 Ariz. at 123, 811 P.2d at 375.

Sharp in this case was unrepresented by counsel at the time of the prior finding against her and received no consideration for the adverse finding. In all other respects she stands in the same position as the claimant in *Cigna.* These differences certainly do not support the application of either form of preclusion in this case.

### III.   Conclusion

■ The result sought by Circle K in this case would punish Sharp for failing to continue litigation in the Industrial Commission to

keep alive the issue of causation. Circle K would require Sharp to continue litigating the issue of causation in case she has an unforeseen future change in condition that would require reopening her claim. Circle K would require Sharp to continue litigating even when she had no financial incentive. This precedent would further neither the policies of fair compensation and reduction of litigation for injured workers upon which Arizona's workers' compensation system is based nor the policy of efficient use of the courts that justifies the application of preclusion.

Confusion in the application of preclusion in workers' compensation cases can be avoided by applying claim preclusion to a claim to reopen or a claim for rearrangement only when: (1) a prior claim has become a valid and final judgment through litigation or by application of A.R.S. section 23–947(B); and (2) the exceptions crafted by the legislature [12] have not been satisfied. Issue preclusion should apply to a claim to reopen or claim for rearrangement only when there has been actual litigation of the same issue in a prior claim. Inferring issue preclusion where no prior litigation has taken place is not consistent with *Cigna* or the policy analysis of the Arizona Supreme Court announced in *Stainless Specialty Mfg.*, 144 Ariz. at 17, 695 P.2d at 266.[13]

The other findings of the ALJ are not challenged by Circle K and are supported by substantial evidence in the record. The award is affirmed.

GERBER, P.J., and GRANT, J., concur.

---

12. See A.R.S. §§ 23–1044(F) and 23–1061(H).

13. Finding issue preclusion or claim preclusion based upon an unambiguous, enforceable settlement agreement is, of course, another matter. *See Cigna*, 168 Ariz. at 123, 811 P.2d at 375.