17 P.3d 114

Michael W. CORNELSON, Petitioner,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

Southwest Gas Corporation, Respondent Employer,

State Compensation Fund, Respondent Carrier.

No. 1 CA–IC 00–0001.

Court of Appeals of Arizona, Division 1, Department D.

Jan. 23, 2001.

As Amended April 10, 2001.

Review Denied May 23, 2001.

Thomas C. Wilmer, Phoenix, Attorney for Petitioner.

Anita R. Valainis, Chief Counsel, The Industrial Commission of Arizona, Phoenix, Attorney for Respondent.

State Compensation Fund, James F. Crane, Vice President and General Counsel by Kent M. Struckmeyer and Ronald H. Moore, P.C., by Ronald H. Moore, Phoenix, Attorneys for Respondents Employer and Carrier.

## OPINION

NOYES, Judge.

¶ 1 This is a Rule 10 special action review of a consolidated Industrial Commission of Arizona award and decision upon review denying petitions to reopen 1987 and 1989 claims for right knee injuries. We discuss and decide two issues: (1) whether the clo-

sure of the 1989 claim with a scheduled disability was void under *Roseberry v. Industrial Commission*, 113 Ariz. 66, 546 P.2d 802 (1976), and (2) whether, when petitioning to reopen after uncontested denials of prior petitions to reopen, proof of actual post-denial change of condition is required under *Phoenix Cotton Pickery v. Industrial Commission*, 120 Ariz. 137, 584 P.2d 601 (App.1978). Concluding that closure of the 1989 claim was valid and that proof of post-denial change was required, we affirm the award and decision upon review.

## I.

¶ 2 While working for Respondent Employer ("Southwest Gas"), Petitioner Employee ("Claimant") injured his right knee in 1987 and again in 1989. Respondent Carrier, the State Compensation Fund ("SCF"), was responsible for the 1987 claim; Southwest Gas was self-insured for the 1989 claim. In 1995, Claimant injured his right knee while at home.

¶ 3 The 1987 injury required arthroscopic surgery, which revealed undamaged menesci and chondromalacia of the patella. The patella was shaved and Claimant was discharged with a 10% permanent impairment, a full range of motion, and no work restrictions. He returned to work, although he experienced occasional soreness in his knee. The SCF closed the 1987 claim with the recommended impairment compensated as a scheduled disability.

¶ 4 The 1989 injury required two arthroscopic surgeries resulting in a subtotal medial meniscectomy. Claimant was discharged without work restrictions but with a 23% permanent impairment for the surgeries and lost range of motion. Claimant returned to work, although he suffered some ongoing tenderness and swelling in his right knee.

¶ 5 On July 17, 1990, Southwest Gas issued a Notice of Claim Status closing the 1989 claim with "permanent disability," and it also issued a Notice of Permanent Disability acknowledging a 23% impairment of the right lower extremity. Southwest Gas, although noting that the SCF had previously paid for a 10% impairment to this extremity, compensated the additional 13% impairment as a *scheduled* disability. Claimant did not timely protest either of these notices. *See* Ariz.Rev. Stat.Ann. ("A.R.S.") § 23–947 (1995).

¶ 6 The 1995 at-home injury to Claimant's right knee required arthroscopic surgery in February 1996, which was covered privately. Claimant returned to regular work, but he had increasing difficulties because of his knee, and in August 1996, he filed petitions to reopen the 1987 and 1989 claims. The petitions were denied. The SCF denial gave no reasons; the Southwest Gas denial stated, "[m]edical information does not indicate any relationship to [1989] industrial injury."

¶ 7 Claimant did not protest either denial. He did, however, within the protest period, file a new injury claim, and he later timely protested Southwest Gas's denial of that claim. During the hearing process, Southwest Gas referred Claimant for an independent medical examination by Glen R. Bair, M.D., who reported that the surgical findings in 1995 were natural consequences of Claimant's prior surgeries and primarily related to the 1987 injury. Claimant then filed a letter withdrawing his hearing request and stating that he intended to file a petition to reopen the 1987 claim.

¶ 8 Subsequently, Claimant filed a second petition to reopen the 1987 claim, and when SCF denied it, he timely requested a hearing. Claimant then retained current counsel, who filed a petition to reopen the 1989 claim. When Southwest Gas denied this petition, Claimant timely requested a hearing. All pending matters were consolidated for hearing.

¶ 9 After hearings at which Claimant and three medical experts appeared, the Administrative Law Judge ("ALJ") issued an award denying both petitions to reopen. The ALJ found that the Notice of Claim Status closing the 1989 claim with permanent disability and the medical report discharging Claimant with additional impairment from the 1989 injury were consistent and, therefore, that the notice was valid. She also found that Claimant had failed to prove a new, additional, or previously undiscovered condition compared to his condition when his first petitions to reopen both claims were denied in 1996. The

ALJ also found that the medical evidence failed to establish any causal link between the 1987 injury and Claimant's condition in or after 1995. (The ALJ made no finding for or against the alleged causal link between the 1989 injury and Claimant's condition in or after 1995.)

 ¶ 10 After the award was affirmed on administrative review, Claimant filed a timely Rule 10 petition for special action. We have jurisdiction under A.R.S. sections 12 120.21(A)(2) (1992) and 23–951(A) (1995), and Arizona Rules of Procedure for Special Actions 10 (Supp.2000). We deferentially review reasonably supported factual findings and independently review legal conclusions. See, e.g., PFS v. Indus. Comm'n, 191 Ariz. 274, 277, 955 P.2d 30, 33 (App.1997).

## II.

### A. Closure of the 1989 Claim

¶ 11 Claimant asserts that closure of his 1989 claim was void under Roseberry. We disagree.

¶ 12 The carrier in Roseberry, basing its decision on a medical report stating that the claimant's condition was not stationary, closed the claim-that is, found that the claimant's condition was stationary. 113 Ariz. at 67, 546 P.2d at 803; cf. Home Ins. Co. v. Indus. Comm'n, 23 Ariz.App. 90, 92–95, 530 P.2d 1123, 1125–28 (1975) (discussing closure of claim when condition is "stationary"). Because the decision was contrary to the medical evidence on which it was based, the supreme court concluded that the closure notice was void on its face, that the claim remained open and, therefore, that the claimant did not have to petition to reopen the claim. See Roseberry, 113 Ariz. ·at 68, 546 P.2d at 804.

 ¶ 13 The present case is unlike Roseberry. Here, Claimant does not argue that the medical evidence failed to support closure of the claim. Claimant in fact concedes that the medical evidence does support the Notice of Claim Status closing the claim with "permanent disability." Claimant instead argues that the Notice of Permanent Disability was void because successive industrially related scheduled disabilities are unscheduled as a matter of law and the notice compensated the 1989 disability as scheduled, while acknowledging a prior award for a scheduled disability. See Ronquillo v. Indus. Comm'n, 107 Ariz. 542, 543–44, 490 P.2d 423, 424–25 (1971). This Notice, however, and the clear error in it, concerned compensation of the 1989 disability; it did not concern closure of the 1989 claim, which is the relevant issue here and in Roseberry. We therefore conclude that the error in the Notice of Permanent Disability did not affect the validity of the Notice of Claim Status closing the 1989 claim. Because the closure was valid, Claimant had to petition to reopen the claim to establish a new, additional, or previously undiscovered condition related to the 1989 injury. See A.R.S. § 23–1061(H) (Supp.2000).

### B. Comparative Date for Reopening

 ¶ 14 To reopen for a new or additional condition, a claimant must establish a change of condition. E.g., Sneed v. Indus. Comm'n, 124 Ariz. 357, 359, 604 P.2d 621, 623 (1979). In cases involving a first petition to reopen, the comparison points for establishing the necessary change of condition are the date the claim was closed and the date the petition to reopen was filed. E.g., id. In cases like the present one, in which a petition to reopen is preceded by an unprotested denial of a prior petition to reopen, the comparison points are the date the Notice of Claim Status denying the prior petition was issued and the date the subsequent petition to reopen was filed. See Phoenix Cotton Pickery, 120 Ariz. at 139, 584 P.2d at 603 (concluding that final denial of petition to reopen "became a binding determination that petitioner's physical condition had not changed so as to justify reopening" and that the date of denial became the date against which any subsequent petition to reopen must be measured).

¶ 15 Claimant asserts that Phoenix Cotton Pickery is "poorly reasoned and implicitly overruled by subsequent decisions." We disagree on both counts, and we reaffirm the validity of that case.

 ¶ 16 In his challenge to Phoenix Cotton Pickery, Claimant mainly relies on Circle

*K Corp. v. Industrial Commission,* 179 Ariz. 422, 880 P.2d 642 (App.1994). The *Circle K* claimant, however, established what the present Claimant could not, namely, a change in condition between successive petitions to reopen. *Id.* at 425, 880 P.2d at 645 ("In her estimation, her symptoms in June 1991, when she filed her second Petition to Reopen, were much worse than her symptoms in October 1988 [when her first Petition to Reopen was denied]."). Because the evidence in *Circle K* met the post-denial changed condition test of *Phoenix Cotton Pickery,* Claimant finds no support in *Circle K.* Because *Phoenix Cotton Pickery* applies to Claimant's case, his second petitions to reopen were properly denied, for they were based on the same condition (the 1995 injury) that existed *before* the first petitions to reopen were denied (in 1996).

¶ 17 Claimant also relies on *Gallegos v. Industrial Commission,* 144 Ariz. 1, 695 P.2d 250 (1985), which involved rearrangement under A.R.S. section 23–1044(F) (1989). The *Gallegos* claimant suffered an industrial back injury and then found work as a mover—with no loss of earning capacity. 144 Ariz. at 2, 695 P.2d at 251. He soon had to quit that job because of back problems, however, and he then found lighter work—with some loss of earning capacity. *Id.* Several months later, the ICA issued a no loss award based on the facts regarding his employment as a mover (the original post-injury job). *Id.; see also* A.R.S. § 23–1047(A)(C) (1995). Although the claimant could have requested a hearing to correct the facts regarding his employment and his loss of earning capacity, *see* A.R.S. § 23–947(A), he did not do so and the award became final. 144 Ariz. at 2, 695 P.2d at 251.

¶ 18 The *Gallegos* claimant eventually petitioned to rearrange the award, based on facts that existed when the award became final-his inability to work as a mover and his resulting loss of earning capacity. *Id.* at 2–3, 695 P.2d at 251–52. The ICA denied rearrangement and this court affirmed, reasoning that the claimant was precluded from establishing a change of earning capacity based on a disability that existed when the award became final. *Id.* at 2–5, 695 P.2d at 251–54. The supreme court reversed; it held that finality

of an award extends to the *facts* supporting the award: "Where the first award has become final, the question of change is to be measured by comparing the facts determined by the final findings and award with those existing at the time of the rearrangement petition. . . ." *Id.* at 5–6, 695 P.2d at 254–55. Thus, the facts underlying the no loss award-claimant's employment and earning capacity as a mover-were final, though wrong.

¶ 19 The court of appeals applied the same preclusion analysis in both *Gallegos* and *Phoenix Cotton Pickery.* Compare *Phoenix Cotton Pickery,* 120 Ariz. at 139, 584 P.2d at 603, *with Gallegos,* 144 Ariz. at 5, 695 P.2d at 254. Because the supreme court rejected this analysis in its *Gallegos* decision, doubts exist as to the continued vitality of *Phoenix Cotton Pickery. See Arizona Workers' Compensation Handbook* § 11.2.6.1, at 11–11 (Ray Jay Davis et al. eds., 1992 & Supp.2000) ("As yet, the consistency of *Phoenix Cotton Pickery* and *Gallegos* has not been tested."). We find that the two cases coexist without conflict.

¶ 20 *Phoenix Cotton Pickery* involved reopening and *Gallegos* involved rearrangement. We find that difference to be significant. However, although the supreme court has never extended *Gallegos* to cases involving reopening, the court of appeals did so a few years ago in *Epstein's Custom Carpentry v. Industrial Commission,* 155 Ariz. 284, 287, 746 P.2d 25, 28 (App.1987). We now question our decision in that case.

¶ 21 *Epstein's* noted that "the result reached in *Gallegos* appears to be contrary to the Supreme Court's decision in *Stainless Specialty Mfg. Co. v. Industrial Commission,* 144 Ariz. 12, 695 P.2d 261 (1985), which was decided after *Gallegos.*" 155 Ariz. at 287–88, 746 P.2d at 28–29. *Epstein's* explained that *Stainless Specialty* held that in the workers' compensation setting, *res judicata* bars relitigation of those issues that were determined in the previous proceedings *"as well as those which could have been decided at the time of the original award."* *Id.* at 288, 746 P.2d at 29 (emphasis in original). Under that standard, the *Epstein's* claimant did not qualify for reopening. The *Epstein's* court, however, felt compelled to

apply the *Gallegos* finality principles, and to affirm a reopening. *Id.* at 287–88, 746 P.2d at 28–29.

¶ 22 *Epstein's* explained why it found no material difference between rearrangements and reopenings, and we find that explanation fairly persuasive regarding the considerations mentioned. *Id.* The present case, however, has drawn into focus a factor that does not appear to have been called to the court's attention in *Epstein's.* That factor is the existence of an administrative record regarding the previous award in a rearrangement and the absence of such a record in a reopening. The crucial fact in *Gallegos* was that the first award was based on a factual determination that the claimant was employed as a mover at a certain wage. *See Gallegos,* 144 Ariz. at 4, 695 P.2d at 253. In other words, an administrative record existed reflecting the facts determined by the award. Such a record exists in rearrangements, which are processed by the ICA, but does not exist in reopenings, which are processed by carriers or self-insured employers. *Compare* A.R.S. § 23–1047(A)(C) *with* A.R.S. § 23–1061(I). While the court in *Gallegos* could and did rely on the ICA administrative record in determining the factual basis for the first award, no such record exists when a carrier or self-insured employer denies a petition to reopen and the denial is uncontested, as was the case regarding Claimant's first petitions to reopen the 1987 and 1989 claims.

¶ 23 *Gallegos* held that, "[w]here the first award has become final, the question of change is to be measured by comparing the facts determined by the final findings and award with those existing at the time of the rearrangement petition." 144 Ariz. at 5, 695 P.2d at 254. That holding cannot be soundly applied when the final award is an uncontested denial of a petition to reopen, for such an award is not based on determined facts of record.

¶ 24 Having again grappled with the relationship between *Gallegos* and *Stainless Specialty,* we conclude that *Stainless Specialty* applies to reopenings and *Gallegos* applies to rearrangements. This application resolves any perceived contradiction between these contemporaneous supreme court cases, and it acknowledges that material differences existed between the proceedings at issue in each of those cases. In a rearrangement, the administrative record will reflect the facts determined by the prior award; in a reopening, no administrative record exists. Therefore, the *Stainless Specialty* holding applies to the present case, the *Gallegos* holding does not, and Claimant's petitions to reopen were properly denied.

¶ 25 Based on our conclusion that *Gallegos* applies to rearrangements and *Stainless Specialty* to reopenings, we agree with *Phoenix Cotton Pickery* and we disagree with *Epstein's.*

## III.

¶ 26 The award and decision upon review are affirmed.

CONCURRING: MICHAEL D. RYAN, Presiding Judge, and SUSAN A. EHRLICH, Judge.